MARÍA LUISA ARCELAY, demandante, apelada y apelante, *v.* MANUEL SÁNCHEZ MARTÍNEZ, haciendo negocios bajo el nombre de Mayagüez Dairy, demandado, apelante y apelado.

Número 10753.

*Sometido:* 4 de febrero de 1953. *Resuelto:* 25 de enero de 1955.

*Enrique Báez García,* abogado del apelante apelado; *Gutiérrez, Saldaña & Sánchez,* abogados de la apelada-apelante.

EL JUEZ ASOCIADO SEÑOR SIFRE emitió la opinión del Tribunal.

Comenzó este litigio mediante demanda en la que se alegó en síntesis, que la demandante es dueña de una casa situada en una zona residencial de la ciudad de Mayagüez, y que contigua a la misma tiene instalada el demandado una planta para la pasterización y venta de leche, en la que se desarrollan actividades industriales y comerciales que le ocasionan a la demandante serios perjuicios a su salud, le interrumpen en el libre y cómodo goce de la vida y de la propiedad, causándole angustias mentales, sufrimientos morales y daños por valor de $25,000. Se solicitó que se ordenara al demandado a cesar en los actos de perturbación, y se le condenara a pagar la suma reclamada, más las costas, gastos y honorarios de abogado. Negó aquél todas las alegaciones de la demanda, y adujo ciertas defensas que serán consideradas en su oportunidad. Se procedió a la vista del litigio, que terminó en el Tribunal Superior, Sala de Mayagüez, por sentencia disponiendo que el

demandado "cese totalmente toda actividad industrial y/o comercial en su referida planta y negocio a las seis de la tarde . . . todos y cada uno de los días de la semana y no se reanuden hasta las seis de la mañana . . . siguiente", y ponga en vigor y realice en dicha planta, las medidas y obras que se mencionan en dicha sentencia, con el fin de suprimir la perturbación. Después de haberse denegado una moción de reconsideración presentada por el demandado, apelaron ambas partes.

En el primero de los errores señalados por el demandado, éste sostiene que se equivocó el tribunal a quo "al declarar con lugar la demanda a base de prueba insuficiente", contención con la que no podemos estar conformes. De acuerdo con las conclusiones de hecho, que sirven de base a la sentencia, la casa de la demandante fué construída en el año 1940 "y desde entonces hasta el mes de junio de 1950 la ocupó y habitó en unión de su señora madre anciana y de un hijo de crianza, con excepción del año 1944, y principios del año 1945, en que estuvo ocupada mediante contrato de inquilinato con la demandante por varios oficiales de la Guardia Costanera. La propiedad tiene un valor de $25,000 a $30,000. Cuando la demandante fabricó su casa . . . el sitio era uno casi exclusivamente residencial. Desde el año 1939 se han establecido, sin embargo, algunos negocios en la vecindad, un establecimiento para la venta de radios y enseres eléctricos, un salón de belleza para señoras, una joyería, un taller de bordado, un almacén de provisiones. A 65 metros de distancia está la Plaza del Mercado de la ciudad. No obstante la existencia de tales establecimientos comerciales, la vecindad es aún predominantemente residencial. El único establecimiento con maquinaria pesada . . . es la planta de pasterización del demandado . . .". "Este negocio . . . comenzó allá para el año 1945 con un pequeño depósito para el expendio. . . de . . . leche . . ." Para dicha época el demandado vendía de 140 a 150 litros de leche diarios. En ocasiones parte de la leche la convertía en quesos que allí fabricaba. El negocio

prosperó, se aumentó la planta física, se compró nuevo equipo y en el año 1949 el demandado estableció la planta de pasterización que tiene actualmente una producción de 3,500 a 3,600 litros de leche pasterizada diariamente. La inversión del demandado en dicha planta, equipo y accesorios monta a la suma de $80,000, ocupando la misma una edificación de dos plantas construída *ad hoc* por el demandado, con frente a la calle del Sol, hoy Santiago R. Palmer, próxima y a lo largo de la línea divisoria con la propiedad de la demandante. En su mitad delantera el edificio de la planta queda a cuatro pies y en su mitad trasera a seis pulgadas de distancia de dicha línea divisoria. El edificio queda separado de la casa propiamente dicha de la demandante, en su fondo por el garaje de ésta y al frente por el espacio abierto de 9 a 10 pies de la entrada de dicho garaje y por una marquesina de igual anchura".

En la conclusión de hecho número 4, describe el tribunal sentenciador la forma en que se desarrollan las actividades en la planta del demandado, y en aquélla, así como en la número 5, a la que haremos mención más adelante, las molestias, trastornos y daños ocasionados a la demandante por razón de las mismas. [1] Dicho tribunal, después de hacer referen-

---

[1] La conclusión de hecho núm. 4, dice así:

"4.—La referida planta de pasterización y venta de leche del demandado está instalada y funciona y opera en tal forma que produce ruidos y causa molestias de tal magnitud y persistencia los primeros y de tal naturaleza las segundas que impiden el sosegado y tranquilo uso de su descrita propiedad por la demandante perjudicando así y menoscabando el bienestar personal de ésta. Los ruidos y consiguientes molestias producidas por los mismos comienzan desde las 3:30 A. M. o 4:00 A. M. todos los días, domingos y días de descanso inclusives, y son causados durante las horas de la madrugada por la descarga de los purrones de los camiones en que la leche es traída a la planta; por el ruido de los camiones, el abrir y cerrar violentamente las portezuelas de los mismos; y por las conversaciones en voz alta de los conductores y sus auxiliares así como de las personas encargadas de recibir la leche. La pasterización comienza a las 6:30 A. M. a 7:00 A. M. y continúa, con pequeños intervalos, hasta las doce de la noche y en ocasiones hasta después de esa hora. Durante todo ese tiempo se produce gran ruido con el funcionamiento de las calderas que producen el vapor necesario para la pasterización y el agua caliente para la esterilización de las botellas y purrones y la desinfección de los demás enseres y artefactos de la planta. Las calderas están alimentadas en tal forma, aparen-

cia en las de derecho a las disposiciones del art. 277 del Código ⌄
de Enjuiciamiento Civil, ed. 1933, en las que se funda la acción,(²) expone que "De la prueba resulta claro y así lo con-

temente con aceite de calidad inferior, que han sufrido grandes explosiones causando la natural alarma y el consiguiente desasosiego entre los vecinos. También causa ruido extraordinario la limpieza y desinfección de las botellas y de los purrones así como la manipulación de éstos al ser llevados, llenos de leche, en un ascensor de la planta baja a la planta alta para allí ser vaciada la leche en tanques *ad hoc* para el proceso de pasterización. Los purrones son de acero y latón y pesa cada uno 115 libras lleno. Igualmente producen ruido inusitado los camiones encargados de la carga de la leche ya pasterizada para ser distribuída fuera de la planta a los clientes del demandado. Uno de estos camiones carga a las 4:00 A. M. según admitió el demandado en su testimonio. El ruido es de tal magnitud y persistencia que ahoga e impide las conversaciones normales en la casa de la demandante y aun en las casas más separadas que la de ésta. Dos de los testigos de la demandante calificaron el ruido de "tremendo". El demandado admitió en el juicio, declarando, que la máquina de lavar purrones hace "mucho ruido" y que el compresor del equipo de refrigeración también hace ruido. La prueba demuestra además que las calderas, una de las cuales está pegada a la propiedad de la demandante, despide humo y hollín que penetra en la casa de la demandante; que dentro de ésta se percibe el olor a gas o aceite proveniente también de las calderas; y que en ocasiones cuando el demandado fabrica quesos con la leche sobrante, se percibe un hedor nauseabundo e insoportable. También demuestra la prueba que los obreros y empleados del demandado sostienen conversaciones y discusiones en alta voz, usando a veces palabras malsonantes y aun obscenas; que las voces de dichos empleados llegan hasta la casa de la demandante, en horas del día y de la noche, a través de los huecos o ventanas abiertas por el demandado en la pared del edificio de la planta próxima a la casa de la demandante; que durante las horas de la noche también penetra dentro de la casa de la demandante, a través de los referidos huecos y ventanas, el resplandor de las luces usadas en el frigorífico. Con dicho motivo se hizo inservible y la demandante abandonó el uso del cuarto dormitorio de la casa más próximo a la planta del demandado. La demandante declaró también y aceptó el demandado que en ocasiones los camiones de dicho demandado se estacionan frente a la casa de la demandante impidiendo la entrada y salida libre del automóvil de ésta de su garaje.

(²) El art. 277 del Código de Enjuiciamiento Civil, ed. 1933, prescribe que:

"Artículo 277.—Todo lo que fuere perjudicial a la salud, indecente u ofensivo a los sentidos, o que interrumpa el libre uso de la propiedad de modo que impida el cómodo goce de la vida o de los bienes, constituye una perturbación que da lugar a una acción. Dicha acción podrá ser promovida por cualquiera persona cuyos bienes hubieren sido perjudicados o cuyo bienestar personal resulte menoscabado por dicha perturbación; y la sentencia podrá ordenar que cese aquélla así como decretar el resarcimiento de los perjuicios".

cluímos como cuestión de derecho que los fuertes y persistentes ruidos producidos por el equipo y accesorios y por los empleados de la planta de pasterización del demandado; el humo y el hollín lanzados por las calderas de la misma; las emanaciones y malos olores provenientes del combustible usado en dichas calderas y de la fabricación de queso; las luces que penetran a través de los huecos o ventanas abiertas sobre dicha propiedad en el edificio de la planta; el estacionamiento de vehículos en la entrada del garaje de la casa de la demandante; y los demás ruidos y molestias que se describen en las conclusiones de hecho 4 y 5, son perjudiciales a la salud y ofensivos a los sentidos de la demandante, le han interrumpido el libre y cómodo uso de su propiedad y han menoscabado su bienestar personal, dentro del significado y alcance de la citada disposición legal . . .".

La evidencia presentada al tribunal a quo, y creída por éste, justifica plenamente la declaración que se hace en la sentencia, en el sentido de "que la forma en que el demandado opera su planta de pasterización de leche y la venta de dicho producto . . . , es y constituye un estorbo o perturbación (*nuisance*) que interrumpe el libre uso por la demandante de su propiedad . . . ; teniendo ésta derecho a que dicha perturbación (*nuisance*) cese y se suprima permanentemente", no existiendo por tanto razón alguna para revocarla por el motivo que se aduce. *Higgins* v. *Decorah Produce Co. et al.,* 242 N. W. 109 (Iowa) ; *Mitchel* v. *Flynn Dairy Co.,* 151 N. W. 434 (Iowa) ; *Kobielski* v. *Belle Isle East Side Creamery Co.,* 193 N. W. 214 (Mich) ; *Danberman* v. *Grant,* 246 Pac. 319 (Cal.) ; *Judson* v. *Los Angeles Suburban Gas Co.,* 106 Pac. 581 (Cal.) ; *Stevens* v. *Rockport Granite Co.,* 104 N. E. 371 (Mass.). Hemos dado cuidadosa consideración a los argumentos que aduce el demandado para sostener que el tribunal a quo incurrió en el error que le atribuye, y los consideramos desprovistos de mérito.

▆▆▆ Nos dice que la casa de la demandante no está en zona residencial, fundándose principalmente en el hecho de

que allí se encuentra ubicada la plaza del mercado de la ciudad de Mayagüez. El tribunal expresó el criterio, como se ha visto, de que a pesar de ello y de haberse establecido algunos negocios en dicha zona desde el año 1939, "la vecindad es aún predominantemente residencial". Suponiendo, sin embargo, que esto no fuera así, y que la casa de la demandante estuviera situada en un sector comercial, esa circunstancia no autorizaría al demandado a servirse de su planta y negocio en la forma en que lo ha venido haciendo, quebrantando seria y gravemente los derechos de la primera. Aunque al considerar si determinada empresa constituye o no una perturbación, la vecindad en que se encuentra es factor relevante, y no obstante el hecho de que las personas que residen en sectores en los que existen establecimientos comerciales e industriales, dedicados a actividades necesarias o convenientes para el bienestar público y el progreso social deben sufrir las incomodidades e inconveniencias naturales e incidentales causadas por las mismas, sin recurso legal para evitarlo, eso en modo alguno significa que estén huérfanas de toda protección, si tales actividades, por la forma en que se llevan a cabo, trascienden el límite de lo que es razonable, y como consecuencia de ello se destruye o perjudica el derecho que también tienen al cómodo goce y disfrute de la vida o de sus bienes, imponiéndoseles una carga en exceso de la que les corresponde soportar, trastornándose de ese modo el equilibrio o balance que debe existir para que sea posible armonizar los derechos correlativos de las partes. Cuando eso ocurre "debido a una actividad que excede los límites de razonabilidad y que causa perjuicio sustancial y desproporcionado a la posesión pacífica de otros, esa actividad es una perturbación". *American Law of Property*, Vol. VI-A, pág. 65; *Quinn* v. *American Spiral Spring Mfg.*, 141 Atl. 855 (Pa.); *Higgins* v. *Decorah Produce Co. et al*, supra; *Danberman* v. *Grant*, supra; *Clinic & Hospital* v. *McConnell*, 236 S.W.2d 384 (Mo.); *Euler* v. *Sullivan*, 23 Atl. 845 (Md.); *Devoke* v. *Yazoo & M.V.R., Co.*, 30 So.2d 816 (La.); *Susquehanna Fertilizer Co.* v. *Spranglen*, 39 Atl. 270

(Md.) ; *Judson* v. *Los Angeles Suburban Gas Co.*, supra; *Stevens* v. *Rockport Granite Co.*, supra. El daño debe ser real y notable, porque la ley no ofrece remedio alguno si se trata de inconveniencias y molestias nimias, o de meras pequeñeces. IV *Restatement of the Law, Torts*, pág. 229. "La vida en la sociedad organizada, y especialmente en comunidades muy pobladas envuelve un choque inevitable de intereses individuales. Prácticamente todas las actividades humanas, a no ser que se desarrollen en lugares yermos, intervienen, hasta cierto extremo con otras, o envuelven algún riesgo . . .", pero cuando a una persona "se le causan daños o se expone a peligros mayores de los que justamente pueden exigírsele que sobrelleve dentro de las circunstancias", IV *Restatement of the Law, Torts*, pág. 231, la que las ocasiona incurre en responsabilidad para con ella, si se demuestra que sus derechos han sido objeto de serio menoscabo.

Las conclusiones del tribunal a quo demuestran sin lugar a dudas que la empresa del demandado, de por sí legal, se ha convertido en una perturbación, debido a la forma de explotarla, teniendo en cuenta el derecho que también tiene la demandante al libre y cómodo goce de sus bienes, originándole a éste por tal motivo, perjuicios que van más allá de los que está llamada a tolerar por razón de la vecindad en que reside.

En situaciones como la presente, es siempre cuestión fundamental a resolver la de si el uso que hace una persona de su propiedad, es o no razonable, tomando en cuenta el derecho de la otra a disfrutar de la propiedad que es suya. En las decisiones judiciales se expresa con claridad el principio de que no existen reglas o normas exactas para determinarlo, y que la solución del problema depende necesariamente de los factores que concurran en cada caso, como por ejemplo, la localidad, la naturaleza, utilidad y valor del uso, que es objeto de contienda, y la extensión y carácter del daño, la naturaleza, utilidad y valor social del uso menoscabado. Dándole a todos ellos el valor que ameritan, reiteramos que el demandado mantiene una perturbación en deterioro de los derechos de la de-

mandante, y que esto es así, considérese la zona en que aquél tiene establecido su negocio como predominantemente residencial, según resolvió el tribunal sentenciador, o como una zona híbrida, comercial y residencial, que es a lo sumo a que podría llegarse, enfocando la situación de la manera más favorable para él.

■ El que la planta de pasterización y negocio de venta de leche redunden en beneficio público, como se sostiene, es una circunstancia de valor, pero en modo alguno de carácter decisivo. En vista de los hechos que el tribunal consideró establecidos por la evidencia, esa circunstancia no justifica que se mantenga la perturbación de que se queja la demandante. *Euler* v. *Sullivan*, supra; *Susquehanna Fertilizer Co.* v. *Malone*, 20 Atl. 900 (Md.); *Quinn* v. *American Spiral Spring Mfg. Co.*, supra; *Judson* v. *Los Angeles Suburban Gas. Co.*, supra. Tampoco lo autoriza el que se haya invertido $80,000 en dicha empresa. *Susquehanna Fertilizer Co.* v. *Spranglen*, supra.

■ Aparentemente pretende el demandado que tenemos en consideración como factor adverso a la parte actora, el que ésta es una "financiera industrial destacada", dueña de una "imponente estructura moderna" dedicada a residencia. Las normas establecidas en el art. 277 del Código de Enjuiciamiento Civil, existen para beneficio de pobres y ricos, porque los unos y los otros son igualmente acreedores a la protección de la ley. Las circunstancias que menciona el demandado no justifican que se excluya a la demandante del ámbito y esfera de la justicia, obligándole a sobrellevar y tolerar, sin amparo alguno, los perjuicios que le causa el primero al hacer un uso excepcional e indebido de su planta y negocio. Trágico en verdad sería que el derecho al cómodo goce y disfrute de la propiedad, se hiciera depender de la situación económica de las partes. No conocemos principio alguno que pueda ser invocado para sancionar una perturbación por el hecho de que la que sufre sus efectos nocivos, resulte ser acaudalada, o más acaudalada que aquél que los

ocasiona. La ley no simpatiza con el absurdo. Los principios que sí conocemos, absolutamente indispensables para la convivencia social y para la coexistencia de intereses y derechos recíprocos, son los que aparecen expuestos en esta opinión, resumidos en la siguiente doctrina, confirmada frecuente y reiteradamente en los precedentes judiciales: "El dueño de una propiedad tiene derecho a dedicarla a cualquier negocio lícito, que no constituya una perturbación *per se*, siempre que lo conduzca en forma tal que no cause inconveniencias irrazonables al vecino en el disfrute razonable de su propiedad. Pero todo negocio, por lícito que sea, tiene que ser explotado con el debido respeto a los derechos de otros, y nadie lo tiene para crear y mantener un estorbo en detrimento de su vecino, aun en el desarrollo de un negocio legal, o a llevarlo a cabo ... de manera perjudicial u ofensiva para aquéllos que residen en la vecindad".

Se admite que la demandante "tiene derecho a gozar cómodamente de la vida como dice el estatuto", refiriéndose indudablemente el demandado al art. 277, supra, pero inmediatamente arguye "que el espíritu que inspira ese precepto legal, ha sido derogado por la realidad en que este pueblo vive". La "realidad" es que nuestra legislación concede ese derecho—que por un lado le reconoce el demandado a la parte actora, y por el otro lado le niega—y que ofrece medios para evitar que se vulnere o conculque ilegalmente, sin lo cual el derecho no podría tener valor práctico alguno. El principio que consagran las disposiciones del citado artículo, por su naturaleza y propósitos, no puede ser obsoleto, como erróneamente se sostiene, y ciertamente que no es antagónico al progreso y desarrollo industrial.

En el segundo señalamiento se alega que fué un error el no dar valor a la defensa de falta de diligencia, una de las suscitadas en la contestación.

En las conclusiones de hecho el tribunal dió por probado que "cuando terminado el inquilinato con la Guardia Nacional la demandante volvió a su casa a principios del año 1945

empezó a notar los ruidos que se producían en el negocio del demandado", y aquélla, "amiga del demandado y de la familia de éste, le habló sobre ello y el demandado prometió subsanarlo mediante mejoras en su negocio y cambio en las horas de comenzar y terminar sus actividades. Efectivamente, según dejamos consignado antes, el demandado mejoró y amplió grandemente su establecimiento. De un pequeño depósito de leche lo convirtió en una moderna planta de pasterización de dicho producto. Empero, los ruidos y molestias, lejos de reducirse, aumentaron en escala progresiva . . . no obstante las continuas gestiones de la demandante con el demandado durante el período desde el año 1945 hasta la fecha del juicio para que dicho demandado cumpliese sus repetidas y nunca cumplidas promesas de operar su planta de forma que no perjudicase a la demandante. Lo que al principio fué una simple perturbación para ésta, durante las primeras horas de la mañana, se convirtió luego en una situación intolerable que privó a la demandante del cómodo uso y goce de su propiedad. El humo, las conversaciones y los malos olores hacían aun de día, la vida imposible dentro de la casa. Se agravó su señora madre enferma. Finalmente la demandante sufrió una depresión nerviosa que le produjo una neurodermatitis que requirió atención facultativa . . . . en el año 1950. En mayo de dicho año la demandante tuvo las últimas conversaciones con el demandado", y "Este le dijo que nada más podía hacer, que lo llevara a la corte". En junio de ese año desocupó la casa por causa del estorbo. (Conclusión 5.) Inició el pleito en el mes de octubre de 1950.

Correspondía al tribunal sentenciador resolver la cuestión planteada en la defensa de incuria, haciendo uso de una sana discreción. *Brown* v. *County of Buena Vista*, 95 U. S. 157; *Laursen* v. *O'Brien*, 90 F.2d 792. No abusó de ella al concluir que estaba desprovista de méritos. En vista de los hechos probados, hubiera sido manifiestamente injusto reconocerle alguno. Además, tratándose de una acción para poner fin a una perturbación de carácter continuo y progresivo,

la defensa no podía tener éxito; *Coll* v. *Biascoechea*, 52 D.P.R. 753; *E. W. Face & Son* v. *Cherry et al.*, 84 S. E. 10 (Va.); *Smith* v. *City of Jefferson et al*, 142 N. W. 220 (Iowa).

En el tercer señalamiento arguye el demandado que se equivocó el tribunal al declarar sin lugar la defensa de *estoppel*. Estaba llamada a fracasar por las mismas razones que justificaron la desestimación de la falta de diligencia.

Sostiene en el cuarto señalamiento que fué error el "no aplicar el principio de prescripción . . .".

Al terminar la demandante de presentar su prueba, el demandado enmendó la contestación, adicionándole la siguiente defensa: "Que esta acción, en lo que respecta a la reclamación de daños y perjuicios, está prescrita por el transcurso de un año, a contar del mes de abril de 1945". El tribunal a quo la declaró sin lugar, diciendo en las conclusiones de derecho: "La cuestión está expresamente resuelta en esta jurisdicción en forma adversa al demandado", citando nuestra decisión en *Capella* v. *Carreras*, 57 D.P.R. 258. Allí se trataba de un pleito sobre perturbación, menoscabo y voluntaria violación del derecho de propiedad con indemnización de daños y perjuicios. Se planteó la defensa de prescripción. Resolvimos que no podía invocarse *"ya que se trata de daños y perjuicios continuos que están latentes hasta que cesa la causa que los genera.* Bien puede decirse que en tal caso la acción dañosa se renueva de día en día, de hora en hora, de minuto en minuto, de segundo en segundo". Al denegar en dicho caso una moción de reconsideración, en la que se sostuvo que "tratándose de una acción sobre perturbación y reclamación de daños y perjuicios, que se funda en el art. 1803 del Código Civil Revisado, la parte actora sólo tendría derecho a ser indemnizada de los daños y perjuicios sufridos dentro del término de un año, inmediatamente anterior a la radicación de la demanda, de acuerdo con el art. 1860, apartado segundo, del mencionado cuerpo legal", manifestamos lo siguiente: "Aquí los daños reclamados resultaron no sólo de la construcción de la cerca que prácticamente arruinó la propiedad de las demandantes.

*Se trata, como ya dijimos, de una perturbación continuada.*"
(Bastardillas nuestras.)

Habíamos decidido en *Colls* v. *Municipio de Lares,* 23
D.P.R. 866, copiando del resumen, que "De acuerdo con los
art. 1869 y 1803 del Código Civil Revisado, prescribe por el
transcurso de un año la acción contra un municipio para re-
clamar daños y perjuicios nacidos de la construcción de una
supuesta perturbación . . . , consistente en una cloaca, muro
de contención y terraplén hechos con objeto de levantar el
nivel de la calle, en ausencia de prueba alguna de daños y
perjuicios que resulten del *mantenimiento de dichas obras
como un estorbo o perturbación continuada . . .*". (Bastardi-
llas nuestras.)

La contención del demandado es que el principio estable-
cido en *Capella* v. *Carreras,* supra, sobre la improcedencia de
la defensa de prescripción, es aplicable cuando se trata de una
reclamación por daños causados a la propiedad, pero no así
cuando se solicita indemnización por perjuicios personales,
por lo cual nos dice que en cuanto a éstos, la demandante "po-
dría reclamar daños y perjuicios sufridos por su persona
desde el 18 de octubre de 1949 en adelante, o sea, dentro del
año anterior a la radicación de la demanda". Discrepamos.
Ese principio no descansa en la naturaleza intrínseca del per-
juicio ocasionado por la perturbación, y sí en el carácter con-
tinuo o progresivo de la causa que lo origina, que renueva
constantemente la acción dañosa. De ese carácter es el es-
torbo a que se refiere el caso de autos.

Estamos perfectamente conscientes de que existe dispari-
dad de criterio en las decisiones judiciales que tratan la
cuestión que plantea el señalamiento, pero le hemos dado aco-
gida a la doctrina expuesta en *Capella* v. *Carreras,* supra,
que tiene el respaldo de precedentes dignos de respeto.
*Werger* v. *St. Louis & N.O.R. Co.,* 35 La. Ann. 645; *Di Carlo*
v. *Laundry & Dry Cleaning Service,* 152 So. 327 (La.);
*McCoy* v. *Arkansas Natural Gas Co.,* 165 So. 632 (La.);
*Devoke* v. *Yazoo & M.V.R. Co.,* supra; *Rowe* v. *Gatke Cor-*

*poration*, 126 F.2d 61. Mientras no se demuestre que esa doctrina es errónea, no hay razón alguna para repudiarla, y no se ha demostrado que lo sea.

En vista de nuestra conclusión sobre el cuarto señalamiento, no hay necesidad alguna de considerar el error que le atribuye el demandado en el quinto al tribunal sentenciador, por haber concedido la suma de $2,500, por concepto de daños y perjuicios.

No tiene razón el apelante al sostener, como lo hace, en el sexto señalamiento, que no debió condenársele a pagar los honorarios de abogado.

En el séptimo y último señalamiento se queja de que se desestimara la moción solicitando la reconsideración de la sentencia. En ésta, como hemos dicho, se dispuso que la demandante tenía derecho a que cesara y se suprimiera la perturbación, ordenándose, para lograrlo, que el demandado paralizara todas las actividades de su planta de pasterización y negocio de leche "a las seis . . . de la tarde todos y cada uno de los días de la semana y no se reanuden hasta las seis de la mañana . . . siguiente", y procediera a realizar las obras y a tomar las medidas que pasamos a mencionar: (*a*) tapiar "herméticamente todos los huecos, aberturas y ventanas existentes en la pared del edificio de la planta que da hacia la propiedad de la demandante"; (*b*) reforzar "por su lado interior dicha pared así como el plafón de la planta alta de dicho edificio con material aislador que elimine o reduzca la proyección de los ruidos de la maquinaria y equipo de la planta a través de la referida pared y del referido techo", (*c*) usar "combustible adecuado, de reconocida calidad, para alimentar las calderas que impida las explosiones, el humo excesivo y los olores desagradables", (*d*) elevar las chimeneas de las calderas, situándolas "de modo y forma que el humo no penetre en la casa de la demandante y las demás del vecindario", (*e*) equipar las chimeneas "con gorros adecuados que recojan el hollín e impida que éste caiga sobre la propiedad de la demandante y las de otros vecinos", (*f*) impedir las discusiones en alta

vóz de sus empleados y el uso por éstos de palabras malsonantes, (*g*) dividir "mediante tabiques o paredes la planta alta del edificio de la planta en dos o tres secciones o departamentos de forma que queden aislados entre sí algunas de las maquinarias y equipo de la planta de pasterización y se reduzcan los ruidos naturales producidos por la misma", (*h*) cambiar "la puerta y escalera de entrada a la planta alta del edificio de la planta de pasterización que queda contigua a la propiedad de la demandante", situando ambas "hacia la pared interior del edificio de la planta". Se le prohibió al demandado que estacionara o permitiera el estacionamiento "de los vehículos de su negocio frente a la entrada del garage de la propiedad de la demandante impidiendo la libre entrada a ésta".

Alegó el demandado que las medidas ordenadas con el propósito de poner fin a la perturbación, resultaban ser impracticables, opresivas y onerosas, solicitando que se le permitiera presentar evidencia para demostrarlo. Varias fueron las razones que adujo para sostener ese aserto. Haremos breve referencia a algunas de ellas.

La disposición prohibiendo toda actividad industrial o comercial después de las seis de la tarde, fué objetada por incluir "toda clase de transacciones, tales como simples operaciones de venta de leche que se realizan sin producir ruido alguno y que son necesarias dentro de la vida social de la comunidad para la alimentación de niños y/o enfermos", y "porque los motores de los compresores de las neveras están especialmente construídos para funcionar permanentemente y si el demandado estuviere obligado a detener la marcha de dichos motores a las seis de la tarde el uso de las neveras resultaría inútil y la leche que se conserva en dichas neveras se deterioraría necesariamente resultando inútil para el consumo humano". Como razones adicionales para protestar de esa parte de la sentencia, sostuvo el demandado que el negocio de leche "está sujeto a accidentes que diariamente afectan su desenvolvimiento normal", que de ocurrir, "imposibilitarían

terminar el proceso de pasterización antes de las seis de la tarde, o en casos extremos, comenzarse antes de dicha hora".

En cuanto a las obras que deben efectuarse en la planta de pasterización, el argumento del demandado fué que no podrían llevarse a cabo "sin la consulta o intervención de los funcionarios del Departamento de Salud y sin la presentación de planos que deben ser sometidos a la Junta de Planes y a la Junta de Permisos, lo que en ningún caso podría hacerse en el término de 30 días", el fijado en la citada sentencia, para llevarlas a efecto. Sostuvo que las medidas relacionadas con las chimeneas, eran innecesarias, y que no era posible realizar las otras obras.

Después de hacer la salvedad de que no estaba renunciando a "cualquier derecho que tenga que ejercitar contra la sentencia", y "únicamente con el propósito de que se haga cumplida justicia en este caso", solicitó el demandado que aquélla se modificara en la forma siguiente: "Eliminando la prohibición de que se realicen operaciones mercantiles en la planta del demandado entre las seis de la tarde y las seis de la mañana"; "Extendiendo el término para realizar operaciones industriales hasta las nueve de la noche . . .".; "En sustitución de los cambios que se exigen dentro del local de la planta . . . , que se permita . . . construir una pared con la altura que la corte disponga y provista del correspondiente material aislante", para evitar "que el alegado ruido trascienda de la planta del demandado a la propiedad de la demandante". Alegó que no es posible que la leche llegue a tiempo a los consumidores, si los camiones en que se distribuye empiezan a cargarse a las seis de la mañana.

La corte a quo denegó la reconsideración, rehusando conceder el permiso solicitado por el demandado para la presentación de prueba. Aclaró, sin embargo, que la sentencia no prohibía "el ejercicio de aquellas medidas de conservación del producto y limpieza de la planta en las horas en que se le prohibe efectuar o llevar a cabo actividad industrial y/o comercial . . .", expresando que "entre las medidas de conser-

vación del producto parece claro que estaría incluída el funcionamiento del frigorífico y neveras para la conservación de la leche, antes o después de su pasterización". En relación con las otras medidas comprendidas en la sentencia, declaró que "ellas son las mínimas que debe cumplir y observar el demandado de acuerdo con la evidencia sometida". Refiriéndose al argumento de que las obras no podían llevarse a cabo sin la aprobación de terceras personas o entidades, decidió correctamente que esa circunstancia no podía perjudicar el derecho de la demandante, citando la decisión en *Kobielski* v. *Belle Isle East Side Creamery Co.*, supra, y respecto al término concedido para efectuarlas, resolvió que a moción del demandado, y previa justificación de la necesidad, se daría "el plazo o tiempo razonable que se requiere para llevar a cabo aquellas obras que no fuese posible hacer en el período de 30 días señalados en la sentencia".

Expuso dicho tribunal en las conclusiones de hecho, que "La evidencia demuestra sin lugar a dudas que el negocio del demandado—planta de pasterización y venta de leche—puede ser operado y explotado únicamente durante las horas del día, o sea entre las 6:00 A. M. y 6:00 P. M., sin menoscabo o perjuicio para el mismo. De esta forma quedarían eliminados durante la noche los ruidos y demás molestias a la demandante y a los demás vecinos en el uso y disfrute de sus respectivas residencias. El propio demandado admitió en su declaración que con su equipo actual la labor de pasterización puede hacerse entre 12:00 M. y 6:00 P. M., o sea durante las horas de la tarde. No vemos por qué todo el trabajo de distribución y venta del producto no pueda hacerse durante dichas horas y durante las horas de la mañana. La evidencia demuestra también fehacientemente que durante las horas del día, o sea durante la operación de la planta de pasterización y actividades relacionadas con los ruidos y demás deficiencias apuntadas pueden ser eliminadas algunas y disminuidas otras", procediendo el tribunal a enumerar las gestiones que deberá realizar el demandado para lograrlo.

Actuaríamos caprichosamente si repudiáramos, sin base o justificación alguna para hacerlo, la conclusión del juzgador en cuanto a las medidas y obras que deben ponerse en vigor y llevarse a efecto, para que quede remediado el mal del que, con razón, se queja la actora. Sería igualmente caprichoso decidir que hizo uso indebido de su discreción, al denegar la reconsideración, sosteniendo así los pronunciamientos de su sentencia.

██ Mientras el demandado-apelante, demostrando su inconformidad con el fallo, sostiene que debe ser revocado en su totalidad, o modificado, la demandante-apelante nos dice en el primero de los tres señalamientos en que funda su recurso, que el tribunal incurrió en error "al concluir que no procedía . . . , en vista de los hechos probados, una orden suprimiendo y eliminando totalmente el negocio de pasterización de leche y otros subsidiarios", del demandado. Dicho tribunal resolvió que no se trata de un estorbo *per se*, y que éste existe debido a la forma en que se desarrollan las actividades industriales y comerciales en la empresa del demandado, teniendo derecho la demandante a que la perturbación "cese y se suprima permanentemente", por los medios consignados en la sentencia, los que a juicio del tribunal evitarán en parte y reducirán en todo caso los trastornos, molestias e inconveniencias que el demandado ha venido causando a dicha demandante. Ésta encuentra cierta incongruencia en que por un lado se le reconozca el derecho a que cese y se ponga fin a la perturbación y por el otro, se decida "que la planta de pasterización y venta de leche . . . no constituye un estorbo . . . *per se*", y que no procede que se elimine totalmente. Arguye que "las actividades industriales y comerciales que de acuerdo con la referida orden "(la sentencia) "podría seguir llevando a cabo durante el día el demandado en el solar contiguo a la residencia de la demandante son de tal naturaleza que inevitable y necesariamente causarían ruidos, molestias e incomodidades de tal magnitud y persistencia que interrumpirían el

libre y cómodo uso de su propiedad", y "perjudicarían su bienestar personal y su salud".

No encontramos inconsistencia alguna en que se haya decretado que la apelante tiene derecho a que se suprima el estorbo, y que a pesar de ello se haya resuelto que es improcedente la supresión absoluta de la empresa. Somos de opinión que el tribunal actuó juiciosa y acertadamente, dándole así aplicación y reconocimiento a principios y normas jurídicas que han tenido y tienen el respaldo de la gran mayoría de los precedentes judiciales, al negarse a ordenar la medida drástica de eliminar totalmente una empresa de por sí lícita, tanto por su naturaleza, como por el sitio en que está situada, concediéndole sin embargo, a la parte actora el remedio que consideró suficiente para poner término a la perturbación, mediante la supresión de sus causas.

Al resolverse que la demandante tiene derecho a que se suprima el estorbo, dictándose una sentencia con los pronunciamientos necesarios para lograrlo, el tribunal en efecto decidió que una vez que se pongan en vigor las medidas y se lleven a cabo las obras que han sido ordenadas, se habrá conseguido ese objetivo, y que los trastornos, inconveniencias y molestias que de ahí en adelante sufra la demandante, no provendrán de una perturbación, en el sentido jurídico del concepto, y sí del uso normal de la propiedad, estando aquélla obligada a tolerarlas. Prosser, *on Torts*, pág. 582. En otras palabras, el fallo descansa en el principio de que en una situación como la que existe en el caso de autos, dándole el mérito debido a todos los factores que están presentes y que son relevantes, ninguna de las partes puede excluir a la otra del uso moderado de sus bienes, estando ambas en el deber de hacerse concesiones, para que pueda alcanzarse un justo medio que permita reconciliar sus intereses.

■ En el segundo señalamiento se queja la demandante de que no se le concediera compensación por los daños causados "a sus derechos reales o patrimoniales", como consecuen-

cia de la perturbación. Sostiene en primer término, que debió condenarse al demandado a indemnizarla por la depreciación que sufrió la casa en el valor del mercado. El tribunal a quo rehusó conceder compensación por ese concepto, por tratarse de "una perturbación de carácter temporero o transitorio que cesará y será suprimida". El valor de la casa disminuyó en un 25%, según el criterio del tribunal, y en un 30% según sostiene la demandante. Ésta arguye que si al demandado se le prohibe totalmente continuar con sus negocios de pasterización y venta de leche, la casa "no habrá sufrido *daño permanente* alguno pues inmediatamente después que cese la perturbación recobrará su valor en el mercado que había depreciado", por razón de aquélla, pero que si el estorbo no se suprime completamente, y como hemos visto su criterio es que ello no se logrará con los pronunciamientos de la sentencia "y se permite al demandado seguir causando una perturbación—(aunque sea durante las horas del día), entonces el valor en el mercado habrá sufrido una depreciación irremediable—", teniendo derecho a recobrar compensación por tal concepto, esto es, por daños de carácter permanente.

En vista de que el estorbo lo crea la forma en que se desarrollan las actividades en la empresa del demandado, y que dicho estorbo quedará suprimido una vez que se cumpla con el fallo, la casa de la apelante, cuando eso suceda, recuperará su valor, *Kentucky West Virginia Gas Co.* v. *Lafferty*, 174 F.2d 848, exceptuando quizás la disminución que pueda ser ocasionada por el hecho de la proximidad de la planta y por las actividades que habrán de continuarse en ella, pero de esa consecuencia no puede ni podrá quejarse la apelante por las razones expuestas. Y no es compensable la depreciación que ha de recobrarse, puesto que es evidente que ese es un daño transitorio y no irremediable, como erróneamente se arguye. Siendo el perjuicio de carácter pasajero, actuó acertadamente el tribunal al no conceder indemnización por la disminución en el valor del mercado, *Kentucky West Virginia Gas Co.* v. *Lafferty*, supra; 15 Am. Jur., pág. 519; *City of*

*Murfreesboro* v. *Haynes*, 82 S.W.2d 236 (Tenn.) ; *Bollinger* v. *American Asphalt Roof Corporation*, 19 S.W.2d 544 (Mo.) ; *City of Richmond* v. *Gentry*, 124 S. W. 337 (Ky.) ; *Theisen* v. *Pittmans & Dean Co.*, 162 N. W. 76 (Mich.).

También sostiene la demandante que de eliminarse totalmente la perturbación, mediante la supresión absoluta del negocio, tendría ella derecho a que se le indemnizara, *primero*, por los daños sufridos hasta la fecha del juicio, *segundo*, por los daños a la propiedad consistentes en la depreciación en el valor de uso de su casa residencia, calculada sobre la base de la disminución en el valor de la renta, y *tercero*, por tales daños y por los irrogados a su persona, esto es, por las molestias, incomodidades, sufrimientos físicos, etc., valorados ambos separada e independientemente.

Discutiremos las cuestiones que se suscitan partiendo de la base de que el estorbo habrá de cesar, y que los perjuicios son de carácter pasajero.

La demandante presentó prueba, sin oposición del demandado, tendiente a demostrar que la perturbación había continuado después de haberse radicado la demanda, y que existía en la fecha en que se celebró la vista del litigio, e igualmente sobre los daños sufridos por ella desde que comenzó el estorbo, hasta dicha fecha. Al terminar de ofrecer su evidencia, pidió permiso para enmendar la demanda con el propósito de conformar sus alegaciones a la prueba, de manera de incluir en la reclamación, los perjuicios que le fueron ocasionados hasta el momento del juicio. Se opuso el demandado y el tribunal decidió que en sus "conclusiones" resolvería si procedía o no conceder indemnización "por los hechos ocurridos después de la radicación de la demanda . . .".

En vista de que se presentó prueba sobre los mencionados extremos, sin objeción, como hemos dicho, por parte del demandado, las alegaciones de la demanda quedaron por esa razón conformadas a la evidencia, sin que para ello fuera necesario obtener autorización. Regla 15 (*b*) de las de En-

juiciamiento Civil, (³) 3 Moore's *Federal Practice*, ed. 1948, págs. 847, 848; *Lientz* v. *Wheeler*, 113 F.2d, 767. Sin embargo, las conclusiones del tribunal demuestran, y así es como podemos interpretarlas, que al resolver el litigio consideró que estaba presente la cuestión relacionada con el alcance de la indemnización y que la resolvió en sentido favorable a la demandante, concediéndole compensación por los perjuicios hasta el día de la vista.

De acuerdo con la doctrina mayoritaria, en un caso como el presente, en el que se trata de daños de carácter transitorio, la indemnización debe extenderse a los causados hasta que se inicia el pleito, *Development In the Law—Damages—*, 61 Harv. L. Rev. 123; *Aldworth* v. *Lynn*, 26 N. E. 229 (Mass.); *Wharton* v. *Empire Mfg. Co.*, 146 S. E. 867 (N. C.); pero tiene nuestra preferencia la minoritaria, que sanciona el que se compensen los sufridos hasta la fecha del juicio, para así evitar multiplicidad de acciones, siempre que el mal que produzca los daños sea de carácter continuo, y que los perjuicios subsiguientes sean similares a los que dieron lugar a la reclamación original. *Development In the Law*, supra; pág. 123; *Schrank* v. *Andres*, 22 N.W.2d 548 (Minn.); *Kerr & Elliot* v. *Green Mountain Mut. Fire Ins. Co.*, 18 A.2d 164 (Vt.); *City of Harrisonville, Mo.* v. *W. S. Dickey Clary Mfg. Co.*, 61 F. 2d 210; Joyce on *Damages*, Vol. III, pág. 2199.

En casos de perturbación, la indemnización generalmente se concede por la depreciación en el valor de la propiedad en el mercado si se trata de daños permanentes, y cuando son de carácter transitorio, por la disminución en el valor de uso o de la renta, así como por los daños especiales que puedan probarse. Usualmente, la disminución en el valor de uso se determina considerando la disminución en el valor de la renta, pero no así indefectiblemente. En el caso de autos se

---

(³) La regla 15 en su apartado (*b*) dispone, en parte, que "cuando con el consentimiento expreso o implícito de las partes o por orden de la corte se someten a juicio cuestiones litigiosas no suscitadas en las alegaciones, tales cuestiones se considerarán a todos los efectos como si se hubiesen suscitado en las alegaciones".

decidió que la demandante no tenía derecho a recobrar del demandado "la pérdida o depreciación en el valor de la renta...de su propiedad ya que la misma no está arrendada ni en el mercado de alquileres desde el año 1945...", y no encontramos error alguno en esa conclusión, 39 Am. Jur. pág. 397; *Norwood* v. *Sheen*, 186 N.E. 102; (Ohio); *Toebbe* v. *City of Covington*, 141 S. W. 421 (Ky.); *Louisville, H. & St. L. Ry. Co.* v. *Roberts*, 139 S. W. 1073 (Ky.). Independientemente del motivo expresado para descartarla, estamos convencidos de que la evidencia que fué presentada por la demandante no hacía compulsorio el adoptar, como base para fijar la indemnización, la pérdida o disminución del valor de la renta.

En apoyo de la contención de que no se le concedió indemnización por la pérdida en el valor de uso, y que ha debido compensársele por ese concepto, y por los daños personales, arguye la demandante-apelante que no puede sostenerse la actuación del tribunal a quo al expresar que la cantidad de $2,500 fijada como indemnización por los daños personales sufridos por la demandante incluía también la depreciación en el valor del uso. Se ampara en la afirmación previamente hecha por dicho tribunal al efecto de que "los hechos probados en este caso únicamente sostienen los daños personales propiamente dichos a la demandante y no perjuicios a su propiedad". Si considéraramos aisladamente el anterior pronunciamiento hecho en el número 2 de sus conclusiones de derecho, tendría razón quizás la demandante. Sin embargo, aparece claramente de los hechos, según los declaró probados dicho tribunal, que con motivo de la perturbación producida "se hizo inservible y la demandante abandonó el uso del cuarto dormitorio de la casa más próximo a la planta del demandado"; "en ocasiones los camiones de dicho demandado se estacionan frente a la casa de la demandante impidiendo la entrada y salida libre del automóvil de ésta de su garaje"—conclusión núm. 4; así como que la demandante, por causa de la perturbación mantenida por el demandado "en junio de 1950 se fué

de la casa trasladándose a otra de su propiedad en el Cerro de las Mesas, próximo a Mayagüez, donde reside en la actualidad"—conclusión núm. 5. Como parte de ésta última también dicho tribunal consignó lo siguiente: "La demandante ha sufrido serios trastornos y molestias físicas y profundos malestares y angustias mentales por la forma incómoda en que se vió obligada a usar y disfrutar de su casa hasta el mes de junio de 1950 con motivo de los ruidos, humo, emanaciones y las demás perturbaciones causadas por la forma en que el demandado opera y explota su negocio; por la consecuente pérdida de tranquilidad, sueño y salud por dicho motivo; y por la natural preocupación e inconvenientes que le causa el verse privada—u—obligada a ello, por las circunstancias de ocupar y vivir su propiedad".

En vista de lo anterior es evidente que el tribunal a quo al afirmar en la segunda de sus conclusiones de derecho que la prueba únicamente sostenía los daños personales propiamente dichos "y no perjuicios a su propiedad" estaba expresando no una limitación al alcance de los daños sufridos por la demandante en relación a la pérdida del uso de su casa residencia, sino negando consecuencias dañosas, de índole física, según los hechos probados, a la propiedad de la demandante.(⁴) Este criterio se ratifica tan sólo con examinar aquella parte de estas últimas conclusiones a virtud de la cual fija el tribunal el alcance del derecho a indemnización a la demandante, situando la responsabilidad del demandado "por el menoscabo personal, molestias, incomodidades, angustias mentales, sufrimientos físicos y enfermedad sufridos por dicho demandante, según se relatan en la conclusión de hecho 5⁹, "así como por las incomodidades y angustias mentales sufridas por dicha demandante al verse privada del uso de su propiedad", concediendo seguidamente la indemnización "por todos los perjuicios así sufridos", en la suma de $2,500, y

---

(⁴) No solicitó la demandante indemnización por daños materiales a la propiedad. Tampoco por gastos en que hubiere incurrido al mudarse a su casa en el Cerro de las Mesas.

reiterando, inmediatamente después de apuntar brevemente lo que a su juicio constituye una confusión en la jurisprudencia en cuanto a si los perjuicios por depreciación en el valor de uso deben estimarse separadamente a los perjuicios directamente personales, que "La cantidad que hemos fijado como la indemnización que debe satisfacer el demandado a la demandante incluye por lo tanto, la depreciación en el valor del uso (*value of use*) de su propiedad para la demandante así como también compensación por las molestias, incomodidades, angustias y sufrimientos físicos y morales sufridos por ella. En verdad, sería difícil si no imposible, valorar separadamente uno y otro daños".(⁵)

En vista de lo anterior, no podemos convenir con la apelante en el significado o alcance que da a la manifestación hecha por el tribunal sentenciador en el sentido de que "los hechos probados . . . únicamente sostienen los daños personales propiamente dichos a la demandante y no perjudiciales a su propiedad". La realidad es que aun cuando dicho tribunal no adjudicó de la indemnización concedida cantidades separadas por uno y por otro daño, éstos fueron en efecto compensados y no nos ha convencido la apelante de que con lo primero se le haya ocasionado perjuicio alguno.

 Se queja en el último señalamiento de error, de no haber sido debidamente indemnizada por los daños personales. La cuantía necesaria y justa para compensar a la parte demandante en un caso como el de autos, debe dejarse al sano juicio, experiencia y discreción del tribunal sentenciador. No se ha demostrado que sea errónea la indemnización que se concedió a la apelante para indemnizarla de todos los perjuicios que le irrogó la perturbación, incluyendo aquéllos que le fueron ocasionados indirectamente, por los trastornos causados a su señora madre. Por los perjuicios

---

(⁵) Consideramos que es innecesario discutir en el caso de autos las razones que producen la confusión anotada por el tribunal sentenciador sobre una cuestión acerca de la cual existe irreconciliable conflicto en los precedentes judiciales.

sufridos directamente por ésta, la demandante no tenía derecho a recibir compensación. *United States Smelting Co.* v. *Sisan*, 191 Fed. 293; *City of Altus* v. *Tinsley*, 95 P.2d 635 (Okl.). Aparentemente el tribunal sentenciador no le dió importancia a los alegados dolores y sufrimientos del hijo adoptivo, pues no se refirió a él específicamente en la conclusión de hecho número 5. Considerando la prueba que tuvo ante sí dicho tribunal sobre ese extremo, el no haberlo hecho, no justifica que se altere el fallo.

*La sentencia apelada deberá ser confirmada.*