RAFAEL FUENTES, demandante y recurrido, *v.* GULF PETROLEUM, S. A. y JOSÉ A. GARCÍA, demandados y recurrentes.

*Número:* R-63-184        *Resuelto:* 11 de diciembre de 1964

*McConnell, Valdés & Kelley, Pablo R. Cancio,* y *Ramón Morán Loubriel,* abogados de los recurrentes; *Peñagarícano & Lloveras,* abogados del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Se trata de un procedimiento de *injunction* acompañado de una solicitud de resarcimiento de daños, basado, según parece, en el Art. 277 del Código de Enjuiciamiento Civil de Puerto Rico, por haber permitido la Gulf Petroleum S.A. y el codemandado señor José A. García, que todas las aguas sucias llenas de grasa y aceite de su estación para la venta

de gasolina y otros productos derivados del petróleo marca Gulf, derramen sobre la propiedad del demandante recurrido señor Rafael Fuentes, ocasionándole daños por la erosión del terreno que circunda la estación del demandante recurrido, en el cual se producen charcas de aguas sucias llenas de grasa y aceite que ensucian los automóviles de los clientes, cuando se detienen a abastecerse de combustibles y a solicitar otros servicios de la estación del demandante recurrido, con la correspondiente merma en el negocio.

La ilustrada Sala sentenciadora llegó a las siguientes conclusiones de hecho: "En la estación de servicios de la demandada se lavan, engrasan y se les cambia el aceite a los vehículos pertenecientes al público en general. Las aguas y la grasa y aceites que se derraman con motivo de esta operación son llevados por una tubería a un tanque conocido con el nombre de separador de grasas donde son parcialmente purificados y luego son conducidos por un tubo hasta la orilla de la carretera donde son derramados en el *sardinet*. Por acción de la gravedad estas aguas pasan frente a la entrada de la estación de servicios del aquí demandante, [pues] a pesar de haber sido sometidos al proceso de purificación, al cual antes nos hemos referido, estas aguas al caer a la carretera llevan consigo una gran cantidad de aceite y de grasa. Este hecho pudo ser comprobado en la inspección ocular al observar las manchas de grasa en la zanja o canal por el que bajan las aguas así como las manchas en las yerbas y en las plantas que a la orilla de la carretera se encuentran. La cantidad de agua con grasa y aceite que entran a la carretera fluctúa de un día a otro y aun durante las mismas horas del día, dependiendo del movimiento comercial del negocio de los demandados. El correr del agua es continuo o casi continuo por lo que, la colindancia del negocio del demandante está siempre mojada y debido a la acción del agua así como el entrar y salir de los automóviles de los clientes del demandante se han formado frente al negocio de éste algunos hoyos en donde se empoza el

agua que conteniendo aceite y grasa baja desde la propiedad de la demandada. Debido a la topografía del terreno, cuando llueve, las aguas provenientes de la parte más alta de la carretera pasan frente al negocio del demandante formando una corriente más o menos fuerte dependiendo de la precipitación fluvial. Con motivo del agua que se empoza frente al negocio del demandante algunos antiguos clientes han dejado de favorecerlo especialmente aquellos que llevaban a lavar su carro, ya que alegan que se les ensucia el automóvil con la grasa y el aceite que flota sobre la superficie de las aguas que se encuentran en la entrada del negocio. Existe también la posibilidad de que en alguna ocasión algunos de los carros que pasan en dirección de Guaynabo hacia la carretera números dos, se desvían muy a la derecha y al invadir el agua que pueda haber allí estancada salpiquen y manchen con ella a los automóviles y a las personas que en esos mismos momentos se encuentran en el negocio del demandado. Esta situación de hechos puede ser remediada, según el propio demandante señor Rafael Fuentes, si se instalase un tubo que recogiese las aguas que frente a su negocio pasan, cubriendo luego este tubo con cemento de forma tal que la entrada a su negocio no se haga difícil."

En sus conclusiones de derechos, la ilustrada Sala sentenciadora hace referencia expresa al Art. 277 del Código de Enjuiciamiento Civil de Puerto Rico—32 L.P.R.A. sec. 2761 (pág. 354)—que dispone: "Todo lo que fuere perjudicial a la salud, indecente u ofensivo a los sentidos, o que interrumpa el libre uso de la propiedad, de modo que impida el cómodo goce de la  vida o de los bienes, constituye una perturbación que da lugar a una acción. Dicha acción podrá ser promovida por cualquiera persona cuyos bienes hubieren sido perjudicados o cuyo bienestar personal resulte menoscabado por dicha perturbación; y la sentencia podrá ordenar que cese aquella así como decretar el resarcimiento de los perjuicios."

Racionalizando la aplicación del Art. 277 a los hechos establecidos por la prueba, la ilustrada Sala sentenciadora sigue exponiendo: "La presencia contínua de agua con grasa frente al negocio del demandante impide y dificulta el libre goce y disfrute de su propiedad y le causa daños irreparables. Son daños irreparables aquellos contínuos y repetidos que dañan y molestan y en los cuales la lesión que causan sólo puede estimarse por conjeturas o en relación con la cual no hay una forma reconocida y acertada que permita determinar los daños. En este caso la prueba ha demostrado que la presencia de las aguas a las que antes nos referimos desalienta el patrocinio del negocio del demandante por parte del público. En la argumentación oral el demandado levantó la defensa de incuria. Tal defensa no está justificada cuando se trata de una acción para poner fin a una perturbación de carácter contínuo y progresivo."

En cuanto a la adjudicación del derecho correspondiente, la ilustrada Sala sentenciadora determinó que: "Tratándose de un estorbo por accidente [entiéndase, *per accidens*] el mismo puede terminarse tomándose por la demandada las medidas necesarias para evitar que el agua ablande y por tanto facilite la destrucción de la entrada del negocio del demandante. Por tanto deberá pasar un tubo de tamaño apropiado, bajo tierra, que recoja las aguas y las pase más allá del negocio del demandante, dicho tubo será cubierto en la parte superior con una capa de cemento que haga fácil y cómodo el acceso al negocio del demandante. La demandada se pondrá de acuerdo con el demandante en cuanto a los días y horas en que este trabajo se realizará de forma que se cause el menor perjuicio posible al demandante mientras el trabajo se realiza. Tales obras deberán comenzar en la colindancia de la casa identificada como de la propiedad del señor Cuevas y la farmacia contigua al negocio del demandante y extenderse hasta la zanja que queda después del negocio que tiene allí instalado la Cooperativa de Cafeteros."

En este recurso de revisión, la Gulf Petroleum, S.A. y el señor José A. García alegan los siguientes errores: 1—Las conclusiones de hecho del Honorable Juez sentenciador están reñidas con la prueba y omiten hechos fundamentales que hubieran hecho variar la decisión; 2—No procede el remedio de *injunction*, puesto que (a) el demandante recurrido tiene un remedio adecuado en ley, (b) los alegados daños irreparables son auto-infligidos y (c) el recurrido no ha solicitado el remedio con "manos limpias"; 3—Aun cuando procediese el remedio de *injunction*, el *injunction* concedido es contrario a derecho, puesto que obliga a los recurrentes a llevar a cabo transgresiones de los derechos de propiedad de dos ciudadanos que no participaron en el pleito, que no fueron añadidos como partes y que no fueron citados.

▆ 1—Hemos examinado la prueba que tuvo ante sí la ilustrada Sala sentenciadora y el hecho suficiente a originar el recurso del *injunction* especial para abatir un estorbo está claramente establecido. Independiente de cualesquiera otras circunstancias, lo que siempre hay que buscar en el caso de un estorbo *per accidens*—estorbo incidental a cierto uso indebido —es la causa que lo origina y la participación en dicha causa de la persona que la origina. Como resolvimos en *Arcelay* v. *Sánchez*, 77 D.P.R. 824 (Sifre) (1955) cita precisa a la pág. 838, el derecho a abatir un estorbo—quizás podamos usar, en sentido metafórico aunque con cierta connotación legal, el término "abatir" como algo que significa "reducir" o "abolir" algún hecho o costumbre dañinos al bienestar social—descansa "en el carácter continuo o progresivo de la causa que lo origina, que renueva constantemente la acción dañosa".

▆ En cuanto a ciertas omisiones incurridas en la apreciación de la prueba que se señalan en el primer error, relativas a la imposición o mitigación de daños, no habiendo resuelto la ilustrada Sala sentenciadora la cuestión del resarcimiento, no creemos que forma parte de la cuestión litigiosa. Queremos aclarar, sin embargo, que la servidumbre que crea

el curso natural de las aguas, no constituye un estorbo *per se*. Pero si las aguas fuesen producto de alumbramientos artificiales o sobrantes de acequias de riego o procedentes de establecimientos industriales que arrastren o lleven en disolución sustancias nocivas—en el caso que nos ocupa, aceites y grasas empleadas en la lubricación de automóviles: Arts. 69–74 Ley de Aguas de 1903, 12 L.P.R.A. secs. 701–706 (págs. 247–248)—constituyen un estorbo que puede ser abatido por el *injunction* que establece el Art. 277 del Código de Enjuiciamiento Civil: *Martínez* v. *P.R. Coconut Industries*, 68 D.P.R. 243 (Travieso) (1948) cita a la pág. 248.

2-a—El segundo error, primer fundamento, presenta más bien una refinada cuestión dentro de la teoría del Derecho que una violación a la norma legislativa. Se ha discutido sobre la propiedad y posible conveniencia de considerar como el mejor remedio para abatir un estorbo el resarcimiento del perjuicio en la esfera cuasi delictual de la negligencia, pues de esta forma, quedarían vigentes las exigencias de los dos intereses vitales de la cuestión litigiosa. La experiencia histórica, fundamento de todo Derecho codificado, buscando un balance más racional entre el bien público y el bien privado, se ha decidido por una coexistencia entre la reducción o abolición del estorbo en el futuro y el resarcimiento del daño producido en el pasado. Según resolvimos en el caso de *Casiano Sales* v. *Lozada Torres*, 91 D.P.R. 488 (Belaval) (1964) cita precisa a la pág. 499: "Al aplicar el Art. 277 de nuestro Código de Enjuiciamiento Civil, hay dos fines que cumplir: (1) reducir la perturbación hasta el punto que sea compatible con el cómodo disfrute de la propiedad y (2) compensar los daños ocasionados hasta el momento del juicio. La existencia de una perturbación guarda relación de causa y efecto con el daño sufrido." 2-b—En cuanto a si los alegados daños irreparables son o no son producto de la propia inercia del demandante, no habiendo ninguna cuestión de

daños ante nos, nos sentimos relevados de considerar la cuestión.

2-c—La defensa de "manos limpias" como la defensa de incuria tienen que ir cediendo ante nuestros propios·conceptos estatutarios de lo que significan un "Derecho Justo" y una "prescripción de acciones". El hecho de haberse tolerado por algún tiempo cierta situación de hecho no derrota el derecho.del que la sufre a abatir un estorbo en cualquier momento, cuando tal derecho ha sido legislativamente consagrado; mucho menos, debemos suponer mala fe por el mero transcurso del tiempo. En el caso de *Arcelay* v. *Sánchez*, supra, nos negamos a aplicar la defensa de incuria, por tratarse de una acción "para poner fin a una perturbación de carácter continuo y progresivo" (pág. 836 *in fine*). Además es dudoso que la defensa de incuria tenga alguna virtualidad frente al completo sistema de prescripción de acciones que contiene la legislación puertorriqueña.

3—Si bien resulta discutible la autoridad de un Juez para ordenar un *injunction* mandatorio que pueda afectar la propiedad de una persona que no haya sido parte, el error, de haberse cometido, no coarta el ejercicio por los demandados del innato sentido jurídico que posee todo ser humano ʹde negociar fuera de las cortes con todas las personas que puedan tener interés en el asunto, otra solución que resulte satisfactoria o solicitar del Tribunal la reforma correspondiente del auto, si así resultare aconsejable, debiendo mientras tanto dejarse en efecto la disposición mandatoria del *injunction.* Como principios generales·del derecho a usarse en caso de no existir ley aplicable al punto—Art. 7 del Código Civil de Puerto Rico (1930)—véanse: 4 Am. Jur.2d sec. 387 (págs. 855–856) y 7 Moore's *Federal Practice* (1955) Rule 62(c) págs. 1364–1368.

*Se confirmará, sujeta a una diligencia de reforma del auto por las demandadas si fuera aconsejable en cuanto al sitio por el cual debe pasarse el tubo que recoja las aguas contamina-*

*das, la sentencia dictada por el Tribunal Superior de Puerto Rico, Sala de San Juan, el día 2 de julio de 1963.*