FANNY CASIANO SALES ET AL., demandantes y recurrentes, *v.* ISMAEL LOZADA TORRES, haciendo negocios bajo el nombre de YAGÜEZ JALOUSIES, demandado y recurrido.

*Número:* R-62-230        *Resuelto:* 30 de noviembre de 1964

*E. Alemañy Fernández,* abogado de las recurrentes; el recurrido no compareció.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Las demandantes recurrentes alegaron ante el Tribunal Superior de Puerto Rico, Sala de Mayagüez, que el proceso industrial de cierta fábrica del demandado recurrido, consistente en la construcción y pintura de ventanas y puertas de metal, e instalada dicha fábrica cerca de la residencia de las demandantes recurrentes, no le permiten disfrutar cómodamente de su propiedad, menoscabando de esta manera su bienestar, debido al ruido que hace el personal que trabaja en la fábrica, la maquinaria de motor y la manipulación de las planchas de metal durante un período de catorce o quince horas diarias, con excepción de los domingos, y a las partículas de pintura que penetran en la residencia de las demandantes recurrentes, afectando la salud de ellas y dañando el mobiliario de su propiedad.

Con relación a los ruidos, la ilustrada Sala sentenciadora consideró probados los siguientes extremos: "En cuanto a la alegación de las demandantes de haber estado sufriendo perjuicios por razón de los ruidos producidos por los obreros que trabajan en dicha fábrica, si estimamos probado que las demandantes han sufrido algunas molestias e inconvenientes, aunque no a partir del 1957 como se alega en la demanda, sinó a partir del año 1960 en que el demandado amplió la fábrica llevando la parte de atrás de la misma hasta poca distancia de la casa residencia de las demandantes, habiéndose demostrado además que las demandantes le llamaron la atención sobre este asunto varias veces al demandado sin haber éste tomado medida alguna para remediar el mal. La prueba demostró que con bastante frecuencia los pintores de ventanas trabajan a la parte de atrás de la fábrica [en el] cuarto de pintura hasta las nueve de la noche, ocasionando el ruido de su trabajo al mover las ventanas y el ruido de su conversación en voz alta la natural molestia a las demandantes, habiendo además el Tribunal podido comprobar en la inspección ocular llevada a cabo, al observar a varios obreros llevando a cabo distintas

operaciones usuales en la fabricación de esas ventanas que, aunque las máquinas que funcionan durante el día en las distintas fases de la operación no producen ruidos fuertes, si se producen ruidos estrepitosos y fuertes por la costumbre de los obreros de esta fábrica de tirar al piso las hojas de aluminio de esas ventanas tan pronto terminan la operación específica que cada uno debe de hacerle, aunque debe tenerse presente que esas máquinas están más o menos en el centro del taller, a no menos de 100 pies de la casa de las demandantes, y dichas labores se llevan a cabo solamente dentro de las horas comprendidas entre las ocho de la mañana y las cinco de la tarde, que son las horas en que hay en el vecindario los ruidos naturales de los movimientos de vehículos y otros ruidos, por lo cual estimamos que, aunque dichos ruidos deben constituir alguna molestia para las demandantes Fanny Casiano y Genoveva Casiano, que son las que permanecen usualmente en la casa durante todo el día, dicha perturbación no es de tal grado que la misma pueda constituir en serio perjuicio para la salud de esas demandantes, quienes demostró la prueba son mujeres que siempre han gozado de perfecta salud, aunque es innegable que esos ruidos tienen que haber estado afectando adversamente la tranquilidad de dichas demandantes desde que [se] amplió esa fábrica hacia atrás en el 1960 hasta el presente."

En cuanto a la perturbación que haya podido causar en la salud de las demandantes las operaciones industriales de la pintura, la ilustrada Sala sentenciadora formuló la siguiente conclusión: "El referido cuarto de pintura es un cuarto pequeño, cerrado por tres lados y con un extractor de aire al fondo que está supuesto a extraer los vapores de pintura y botarlos por una chimenea que queda en la esquina noroeste de la fábrica, como a 50 pies de la casa de las demandantes, pero debido precisamente a que la parte del frente del cuarto es abierto, al pintar [estas] ventanas con pistolas de presión los vapores de pintura salen no solamente

hacia atrás por el extractor sinó también por el frente y a través de la pared trasera de esta fábrica, que según puede verse claramente en la fotografía que es el *exhibit 2* no es una pared sellada, saturando esos vapores de pintura esa misma pared y la arboleda que queda pegada a la fábrica en la esquina noroeste de la misma, habiendo este Juez podido observar en la inspección ocular llevada a cabo que ni la arboleda que queda entre la casa de las demandantes y ese cuarto de pintura, ni la pared norte de la casa de las demandantes, que es una pared vieja sin pintar y que es la más próxima al cuarto de pintura, ni una pequeña letrina que queda entre la casa de las demandantes y ese cuarto de pintura, tenían la más mínima cantidad de pintura adherida a sus superficies, siendo ello indicio claro de que las corrientes de aire que predominan en ese sitio llevan consistentemente esos vapores de pintura hacia el norte, o sea, hacia el lado contrario de la casa de las demandantes, que queda situada en un nivel un poquito más alto que el nivel de la fábrica, siendo forzoso concluir en vista de estos hechos que ningún perjuicio han sufrido las demandantes por razón de esos supuestos vapores de pintura que se alega en la demanda que entraban a la casa residencia de las demandantes.[1]"

Como conclusión de derecho esencial, la ilustrada Sala sentenciadora hizo uso de la exposición doctrinal del caso de *Arcelay* v. *Sánchez*, 77 D.P.R. 824 (Sifre) (1955) cita precisa a la pág. 832, que establece: "Aunque al considerar si determinada empresa constituye o no una perturbación, la vecindad en que se encuentra es factor relevante, y no obstante el hecho de que las personas que residen en sectores en

---

[1] Es posible que en ocasiones llegue hasta la casa de las demandantes el olor característico de esta pintura y que hasta se hayan llegado a pintar levemente algunas cosas dentro de dicha casa, pero ningun daño ha podido ocasionarle a las demandantes esas cantidades mínimas de vapor de pintura, y el daño que puedan haber sufrido estos pocos artículos que según las demandantes han resultado pintados, y de la cual no quedamos convencidos, es de muy poco valor."

los que existen establecimientos comerciales e industriales, dedicados a actividades necesarias o convenientes para el bienestar público y el progreso social deben sufrir las incomodidades e inconveniencias naturales e incidentales causadas por las mismas, sin recurso legal para evitarlo, eso en modo alguno significa que estén huérfanas de toda protección, si tales actividades, por la forma en que se llevan a cabo, trascienden el límite de lo que es razonable, y como consecuencia de ello se destruye o perjudica el derecho que también tienen al cómodo goce y disfrute de la vida o de sus bienes, imponiéndoseles una carga en exceso de la que les corresponde soportar, trastornándose de ese modo el equilibrio o balance que debe existir para que sea posible armonizar los derechos correlativos de las partes. Cuando eso ocurre 'debido a una actividad que excede los límites de razonabilidad y que causa perjuicio *sustancial* y desproporcionado a la posesión pacífica de otros, esa actividad es una perturbación' [citas]. *El daño debe ser real y notable*, porque la ley no ofrece remedio alguno si se trata de inconveniencias y molestias nimias, o de meras pequeñeces. IV *Restatement of the Law, Torts*, pág. 229. 'La vida en la sociedad organizada y especialmente en comunidades muy pobladas envuelve un choque inevitable de intereses individuales. Prácticamente todas las actividades humanas, a no ser que se desarrollen en lugares yermos, intervienen, hasta cierto extremo con otras, o envuelven algún riesgo . . .', pero cuando a una persona 'se le causan daños o se expone a peligros mayores de los que justamente pueden exigírsele que sobrelleve dentro de las circunstancias' IV *Restatement of the Law, Torts*, pág. 231, la que las ocasione incurre en responsabilidad para con ella, *si se demuestra que sus derechos han sido objeto de serio menoscabo*." El énfasis suplido está acotado por la propia Sala sentenciadora y no por nuestra ponencia.

Aplicando a los hechos de este caso, la doctrina del caso de *Arcelay* v. *Sánchez*, la ilustrada Sala sentenciadora con-

cluye: "A la luz de esos principios, somos de opinión que el demandado ha venido operando esta fábrica desde el 1960 hasta el presente sin tomar ciertas sencillas precauciones para evitar ruidos que no son necesariamente inherentes a la operación de esta industria, perturbando innecesariamente a las demandantes en el tranquilo disfrute de su hogar, teniendo las demandantes derecho a que se le impongan restricciones al demandado en la explotación de esta industria para ponerle fin a estos inconvenientes, artículo 277 del Código de Enjuiciamiento Civil, aunque somos de opinión por otro lado, que no procede que se condene al demandado al pago de daños, ya que las molestias ocasionadas a las demandantes por los ruidos de esta fábrica no han sido de tal magnitud que haya afectado la salud de las demandantes, o que puedan considerarse un serio trastorno para el tranquilo disfrute de su hogar . . . Por todo lo cual . . ., 1—Se prohibe al demandado, bajo apercibimiento de desacato, que realice ninguna clase de trabajo de fabricación o pintura de ventanas en la fábrica objeto de esta acción antes de las siete de la mañana o después de las seis de la tarde, a no ser que el demandado tome medidas para sellar en forma hermética toda la parte de atrás y el lado sur de su fábrica, de manera que los ruidos no salgan al exterior. 2—Se ordena al demandado a tomar aquellas medidas que fuesen necesarias para evitar que en el curso normal de la operación de esta fábrica sus empleados y trabajadores tiren las hojas de ventanas, las ventanas, la materia prima o herramientas en forma tal que causen ruidos estrepitosos o que realicen cualquier otra actividad que produzca ruidos innecesarios o que resulte ofensivo al decoro de las demandantes. 3—Se declara sin lugar la reclamación de daños y perjuicios formulada por las demandantes. 4—Se condena al demandado al pago de las costas sin incluir honorarios de abogado."

Posteriormente a la sentencia, las demandantes aquí recurrentes, solicitaron de la ilustrada Sala sentenciadora la

inclusión adicional de las siguientes conclusiones de hecho: "(a) La chimenea de la fábrica supuestamente utilizada para botar los vapores de pintura hacia el espacio no aparece en las fotografías ofrecidas y admitidas en evidencia como exhibit 1 y 2 y, asimismo, en la inspección ocular que se llevó a cabo donde está localizada la fábrica, se pudo comprobar que en dicho sitio no había tal chimenea en función y sí unos restos de latas completamente separados del sitio o hueco por donde debían de salir los vapores o pases de la pintura, y de haber existido alguna chimenea estaba totalmente desmantelada. (b) El hueco o sitio por donde supuestamente los vapores de pintura salían de la fábrica hacia el exterior y en donde debía de existir una chimenea, queda frente y bajo la arboleda que según la inspección ocular estaba saturada de pintura. (c) No desfiló prueba por parte del demandado para establecer que las corrientes de aire soplaban hacia la parte norte de la fábrica o sea en dirección contraria de la casa de las demandantes, y que la conclusión del Tribunal sobre ese extremo se basó en que la arboleda que da a la parte Noreste de la fábrica estaba saturada de pintura. (d) El Dr. Rafael Muñoz, perito de las demandantes, quien realizó análisis a los fines de determinar las substancias nocivas en el aire dentro de la casa de los demandantes, manifestó que en dicho sitio había una concentración de tolueno, uno de los compuestos de la pintura, que fluctuaba entre 50 y 180 partes por millón, y manifestó además el Dr. Muñoz que era permisible y seguro para la vida humana una concentración hasta de 200 partes por millón del compuesto de tolueno en la atmósfera y que una concentración menor de 200 partes por millón de dicho compuesto podía en ciertas circunstancias causar efectos nocivos. (e) En la parte norte de la fábrica existe una muralla de cemento construída por el demandado que la separa de un solar y casa propiedad de Hipólito Pérez, habiéndose construído dicha muralla a instancia del Sr. Pérez con motivo de los ruidos y vapores de pintura que provenían de la

fábrica. (f) Que la casa donde residen las demandantes fue construída hace más de 30 años."

■ Resolviendo esta moción, la ilustrada Sala sentenciadora adicionó a las conclusiones de hechos probados, la primera conclusión adicional propuesta por las demandantes, o sea,: "La chimenea de la fábrica supuestamente utilizada para botar los vapores de pintura hacia el espacio no aparece en las fotografías ofrecidas y admitidas en evidencia como exhibit 1 y 2 y, asimismo, en la inspección ocular que se llevó a cabo donde está localizada la fábrica, se pudo comprobar que en dicho sitio no había tal chimenea en función y sí unos restos de latas completamente separados del sitio o hueco por donde debían de salir los vapores o gases de la pintura, y de haber existido alguna chimenea estaba totalmente desmantelada," y denegó las otras. Es conveniente dejar consignado que los hechos propuestos en las conclusiones de hecho adicionales están cubiertos por la prueba, y no aparece de la prueba que los hechos propuestos fueran objeto de controversia en cuyo caso, deben considerarse como hechos jurídicamente establecidos: *Villaronga, Com.* v. *Tribl. de Distrito*, 74 D.P.R. 331 (Sifre) (1953) cita precisa a las págs. 344–345.

En su recurso de revisión ante nos, las demandantes recurrentes señalan como único error de la ilustrada Sala sentenciadora, haber concluido como concluyó, que a pesar de existir una perturbación dentro del significado legal de dicho término en el Art. 277 del Código de Enjuiciamiento Civil de Puerto Rico, las demandantes recurrentes no tenían derecho a recobrar daños y perjuicios. Nos hemos extendido más de lo necesario en la exposición de los antecedentes del caso, porque ante el resultado que ha obtenido la ilustrada Sala sentenciadora al aplicar estrictamente la doctrina de *Arcelay* v. *Sánchez*, supra, tal vez resulte conveniente comentar dicho resultado.

La ley aplicable al caso es el Art. 277 del Código de Enjuiciamiento Civil de Puerto Rico: 32 L.P.R.A. sec. 2761

(pág. 354)—que dispone: "Todo lo que fuere perjudicial a la salud, indecente u ofensivo a los sentidos, o que interrumpa el libre uso de la propiedad, de modo que impida el cómodo goce de la vida o de los bienes, constituye una perturbación que da lugar a una acción. Dicha acción podrá ser promovida por cualquiera persona cuyos bienes hubieren sido perjudicados o cuyo bienestar personal resulte menoscabado por dicha perturbación; y la sentencia podrá ordenar que cese aquélla así como decretar el resarcimiento de los perjuicios."

■ Examinada en su totalidad la exposición doctrinal del caso de *Arcelay* v. *Sánchez*, puede afirmarse categóricamente que dicho caso no intenta restringir los efectos benéficos del Art. 277 del Código procesal del 1904, ni hacer una distinción en cuanto a la compensabilidad basada en la magnitud del daño. El caso de *Arcelay* v. *Sánchez*, siguiendo más la circunstancia industrial norteamericana que nuestra propia circunstancia, objeto de una cuidadosa planeación pública, lo que pretende es buscar esa mutualidad del beneficio entre el interés público y el perjuicio privado, ese equilibrio jurídico imprescindible en todo Derecho justo, que le permita a nuestros tribunales de hecho adoptar aquellas medidas restrictivas en la operación de los procesos industriales que resulten compatibles con el disfrute razonable de la propiedad y el bienestar personal, autorizando a compensar los daños causados por la operación irrestringida del proceso industrial hasta el momento mismo del juicio.

■ Claro es, que cuando se toma aisladamente ciertos conceptos del cuerpo doctrinal de una decisión, puede obtenerse un precedente contrario a su verdadero espíritu, siendo una de las reglas de oro del Digesto trabajar con el texto completo de la institución antes de determinar su aplicabilidad. Notamos que del texto arriba transcrito del caso de *Arcelay*, la ilustrada Sala sentenciadora subraya, como conceptos claves para la interpretación, las siguientes palabras:

"Sustancial"; "el daño debe ser real y notable"; "Si se demuestra que sus derechos han sido objeto de serio menoscabo". Ahora veamos como cambia la interpretación indicada mediante la reducción del concepto, al tomarse en su totalidad el concepto: "eso en modo alguno significa que estén huérfanas de toda protección, si tales actividades, por la forma en que se llevan a cabo, trascienden el límite de lo que es razonable y como consecuencia de ello se destruye o perjudica el derecho que también tienen al cómodo goce y disfrute de la vida o de sus bienes, imponiéndoseles una carga en exceso de la que les corresponde soportar, trastornándose de ese modo el equilibrio o balance que debe existir para que sea posible armonizar los derechos correlativos de las partes. Cuando eso ocurre 'debido a una actividad que excede los límites de razonabilidad y que causa perjuicio *sustancial* y desproporcionado a la posesión pacífica de otros, esa actividad es una perturbación'. . . . *El daño debe ser real y notable,* porque la ley no ofrece remedio alguno si se trata de inconveniencias y molestias nimias, o de meras pequeñeces."

Nos vemos obligados a un pequeño paréntesis para añadir que en el concepto "el daño debe ser real y notable" hay un error en la traslación de los significados de la traducción del texto inglés del cual toma el ponente su comentario. El texto inglés dice: *"By substantial invasion is meant an invasion that involves more than slight inconvenience or petty annoyance. The law does not concern itself with trifles and therefore there must be a real and appreciable interference with the present usability of a person's land before he can have a cause of action under the rule here stated."* Como se ve el sentido exacto en que se usa el concepto *substantial,* en el *Restatement of the Law* es como algo distinto a una ligera inconveniencia o pequeña incomodidad y el concepto *real and appreciable* traducido como real y notable, debe ser entendido como algo verdadero y perceptible a los sentidos. En cuanto al significado que deba dársele el concepto *trifles—*

bagatela, menudencia—es bueno recordar que todos estos giros idiomáticos sobre lo mínimo están inspirados en la vieja máxima pragmática *"De minimis non curat lex"* y en relación a magnitud se refieren a errores infinitesimales, y de acuerdo con la jurisprudencia, podemos aceptar la declaración, que aun tratando la regla pragmática de evitar toda litigación sobre lo mínimo, tradicionalmente los tribunales se sienten inclinados a conceder algún remedio rápido y justo en aquellos casos que pueda existir un derecho a lo mínimo: *Swicegood* v. *Feezel*, 196 S.W.2d 713 (Burnett) (1946) cita precisa a la pág. 716; *McCullough* v. *Hartpence*, 58 A.2d 233 (Jayne) (1943) cita precisa a la pág. 234.

De manera, pues, que al aplicar el Art. 277 de nuestro Código de Enjuiciamiento Civil, hay dos fines que cumplir: (1) reducir la perturbación hasta el punto que sea compatible con el cómodo disfrute de la propiedad y (2) compensar los daños ocasionados hasta el momento del juicio. La existencia de una perturbación guarda relación de causa y efecto con el daño sufrido. Cuando se trata de daños mínimos, por ser a su vez mínima la perturbación, lo único que queda afectado es el montante de la compensación.

■ Ahora bien, comparado el cuadro de hechos que presenta el caso de *Arcelay*—una planta de pasterización de leche—con los hechos de este caso—una fábrica para la construcción y pintura de ventanas y puertas de metal— creemos que en este caso también debe compensarse a las demandantes recurrentes por los ruidos y las substancias nocivas que circulan con el aire dentro de su propia casa. El hecho que la cantidad no sea suficiente para producir un envenenamiento, no deja de crear una perturbación cuando es suficiente para provocar vómitos, mareos y algún otro malestar físico.

*Por las razones expuestas se modificará la sentencia dictada el 17 de agosto de 1962 por el Tribunal Superior de Puerto Rico, Sala de Mayagüez, en el sentido de ordenar la*

500

*restauración de la chimenea de la fábrica del demandado,
elevándola a una altura que evite la circulación de substan-
cias nocivas por la residencia de las demandantes recurrentes
y concediéndole a las demandantes recurrentes la cantidad de
$3,500 por los daños sufridos hasta el momento del juicio, con
costas y $700 para honorarios de abogado.*