La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
Hoy nos corresponde atender una petición de injunction permanente en una acción de estorbo público al amparo del Art. 277 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2761.
I
No existe controversia en torno al hecho de que la Sra. Lillybeth Colberg (señora Colberg) mantiene en su propie-dad cincuenta y ocho perros y treinta gatos. Ante ello, el Sr. Juan Flores Berger y su esposa, la Sra. Miriam Jiménez Román (esposos Flores-Jiménez), quienes son dueños de una propiedad colindante a la residencia de la señora Col-berg, iniciaron una serie de trámites ante el Departamento de Salud dirigidos a remover los animales de la propiedad de la señora Colberg. Posteriormente, recurrieron al foro judicial mediante una demanda de injunction para obtener el cese de un estrobo público.
Según revelan los documentos que obran en autos y los hechos que el Tribunal de Primera Instancia encontró pro-bados, en junio de 2004 el señor Flores Berger presentó una querella ante la Oficina de Salud Ambiental del Dis-trito de San Germán, en la cual alegó que la señora Col-berg mantenía un gran número de perros en su residencia. Ante dicha querella, los Sres. Edwin Alvarado Torres (se-ñor Alvarado Torres), Inspector de Salud Ambiental, y Ra-món Medina Galindo, supervisor de distrito de la Oficina de Salud Ambiental (señor Medina Galindo), acudieron en *848 varias ocasiones a inspeccionar la residencia de la señora Colberg. Conforme a la prueba que obra en autos y según demuestra el testimonio del señor Medina Galindo, luego de las visitas realizadas por los inspectores de Salud Am-biental se le cursó una notificación a la señora Colberg para que reubicara los perros que mantenía en su residen-cia, debido a alegadas violaciones al Reglamento General de Salud Ambiental, Reglamento Núm. 6090 de 31 de enero de 2000 (Reglamento de Salud Ambiental). Véanse: Apéndice de la Petición de certiorari, pág. 63; Trascripción de la Prueba, Apéndice de la Petición de certiorari, págs. 111-112.
Por otro lado, en enero de 2005 se presentó una denun-cia ante el Tribunal de Primera Instancia por violaciones al Reglamento de Salud Ambiental. Véase Trascripción de la prueba, Apéndice de la Petición de certiorari, págs. 113 y 156. Dicho procedimiento judicial se instó al amparo de la Ley sobre Controversias y Estados Provisionales de Dere-cho, Ley Núm. 140 de 23 de julio de 1974 (32 L.P.R.A. sees. 2871-2877). Sin embargo, el tribunal archivó este proceso y se refirió al trámite administrativo ante el Departamento de Salud. Véase Trascripción de. la prueba, Apéndice de la Petición de certiorari, pág. 113. Tras dicha determinación judicial, el señor Medina Galindo suscribió una misiva de 17 de marzo de 2005, mediante la cual le solicitó a la re-presentante legal de la señora Colberg cierta documenta-ción sobre los permisos necesarios para operar un albergue de animales. Apéndice de la Petición de certiorari, págs. 44-45.(1)
Así las cosas, el 22 de junio de 2005, los esposos Flores-Jiménez presentaron una demanda de injunction contra la señora Colberg. En su demanda, invocaron las disposicio-nes del Art. 277 del Código de Enjuiciamiento Civil, 32 *849 L.P.R.A. see. 2761, e indicaron que la señora Colberg man-tiene una gran cantidad de perros y gatos que constituyen un estorbo a su propiedad y a la propiedad pública, y que esta tenencia de animales les haya privado del uso y dis-frute de su propiedad, debido a los ladridos constantes de noche y de día, los malos olores y las amenazas de ataques. Además, los demandantes peticionarios alegaron que ha-bían recabado sin éxito la intervención de las autoridades públicas de sanidad, por lo que era necesario recurrir al foro judicial para detener el daño causado por el estorbo que la señora Colberg alegadamente mantiene en su hogar.
Oportunamente, la señora Colberg contestó la demanda y presentó una reconvención. Luego de celebrar una vista sobre injunction permanente que se extendió por varios días, el Tribunal de Primera Instancia dictó sentencia el 5 de agosto de 2005. En su dictamen, declaró “con lugar” la demanda y ordenó a la señora Colberg a desalojar los ani-males de su propiedad en un término de noventa días. También le ordenó pagar la cantidad de cinco mil dólares a cada demandante como compensación por los daños sufri-dos y le impuso el pago de dos mil quinientos dólares en concepto de honorarios de abogado.
La esencia de la determinación del foro primario fue que la señora Colberg mantiene “una cantidad irrazonable de perros y gatos los cuales con sus ruidos y malos olores im-piden que los demandantes disfruten tranquilamente de su hogar”. Apéndice de la Petición de certiorari, pág. 36. Por lo tanto, concluyó que los demandantes peticionarios te-nían el derecho al cese permanente de dicha perturbación. Además, el tribunal indicó que, transcurrido un año de presentada la querella sin que el Departamento de Salud realizara la vista administrativa, el proceso administrativo resultaba ineficaz, por lo que el procedimiento de injunction era la única vía que los demandantes peticionarios tenían disponible.
Inconforme, la señora Colberg recurrió al Tribunal de Apelaciones. Dicho foro apelativo intermedio revocó la sen- *850 tencia del Tribunal de Primera Instancia y devolvió el caso al foro administrativo para que continuaran los procedi-mientos de rigor.
Oportunamente, los esposos Flores-Jiménez recurrieron a este Tribunal mediante un recurso de certiorari. Aducen que erró el Tribunal de Apelaciones al revocar el injunction permanente emitido por el tribunal de instancia según el fundamento del agotamiento de remedios administrativos. Arguyen, además, que el recurso de injunction para abatir un estorbo público no requiere el agotamiento de los reme-dios administrativos y que, antes de presentar su de-manda, le proveyeron al Departamento de Salud una opor-tunidad amplia para intervenir en el caso. En segundo lugar, indican que procede confirmar el injunction decre-tado por el tribunal de instancia, pues la prueba presen-tada en las vistas estableció que la señora Colberg tiene una situación descontrolada en su residencia que ocasiona malos olores, ruidos, la presencia de moscas y el riesgo de enfermedades que menoscaban la tranquilidad de su hogar y del vecindario.
El 12 de enero de 2007 expedimos el auto. Contando con la comparecencia de las partes, procedemos a resolver.
II
Como asunto prioritario, debemos examinar si los de-mandantes peticionarios tenían que agotar remedios admi-nistrativos como antesala a solicitar un injunction según las disposiciones del Art. 277 del Código de Enjuiciamiento Civil, supra, sobre un estorbo público.
Comenzamos este análisis indicando que no tienen razón los peticionarios al argumentar que el Tribunal de Apelaciones erró al atender el asunto de agotamiento de remedios ante el hecho de que la señora Colberg no lo argumentó como error ante el foro apelativo intermedio. In- *851 dependientemente de los méritos de la determinación del tribunal apelativo intermedio en cuanto al agotamiento de remedios administrativos, debemos recordar que un “tribunal apelativo tiene la facultad inherente de considerar y resolver errores patentes que surjan de un recurso aun cuando éstos no hayan sido presentados por las partes”. Hernández v. Espinosa, 145 D.P.R. 248, 264 (1998). Véanse, además: Hons. Castro, Cabán v. Depto. de Justicia, 153 D.P.R. 302, 312 (2001); Ab Intestato Marini Pabón, 107 D.P.R. 433, 439-440 (1978). En armonía con esta nor-mativa, el Tribunal de Apelaciones podía entrar a conside-rar si en este caso procedía requerir que las partes agota-ran los remedios administrativos ante el Departamento de Salud, máxime cuando de la trascripción de la vista y de la sentencia del tribunal de instancia surge que se realizaron ciertos trámites iniciales ante dicha agencia.
Aclarado lo anterior, procedemos a examinar la norma-tiva sobre el agotamiento de los remedios administrativos.
III
La doctrina del agotamiento de los remedios administrativos es una norma de autolimitación judicial que en varias ocasiones hemos interpretado y aplicado. En esencia, esta doctrina determina la etapa en que un tribunal de justicia debe intervenir en una controversia que se ha presentado inicialmente ante un foro administrativo. Asoc. Pesc. Pta. Figueras v. Pto. del Rey, 155 D.P.R. 906, 916-917 (2001); Mun. de Caguas v. AT & T, 154 D.P.R. 401, 407 (2001). Cuando aplica, requiere que los tribunales se abstengan de intervenir hasta tanto la agencia atienda el asunto. Por lo tanto, usualmente se invoca el agotamiento cuando una parte ante el foro administrativo solicita la intervención judicial previo a consumar el procedimiento administrativo. Mun. de Caguas v. AT & T, supra. *852 Véanse, además: Guzmán y otros v. E.L.A., 156 D.P.R. 693, 712 (2002); Ortiz v. Panel F.E.I., 155 D.P.R. 219, 241 (2001).
No obstante, la utilidad de esta doctrina, que sin duda fomenta que las agencias utilicen y apliquen su conocimiento especializado, hemos clarificado que la exigencia del agotamiento de los remedios no es un principio de aplicación inexorable. En virtud de ello, la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico dispone, entre otros supuestos, que se podrá eximir a una parte de agotar los remedios ante la agencia cuando el remedio administrativo sea inadecuado; cuando requerir el agotamiento resulte en un daño irreparable al promovente y, en el balance de intereses, no se justifiqúe agotar esos remedios, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva de los procedimientos. Sec. 4.3 de la Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. see. 2173). Véanse, además: Guzmán y otros v. E.L.A., supra, pág. 714; Asoc. Pesc. Pta. Figueras v. Pto. del Rey, supra, pág. 917.
Cónsono con estas excepciones al requisito de agotamiento de remedios, hemos expresado que cuando “el agravio sea uno de ‘patente intensidad .al derecho del individuo que reclame urgente reparación’, se puede utilizar el injunction para eludir el cauce administrativo”. (Citas omitidas.) Rivera v. E.L.A., 121 D.P.R. 582, 596 (1988). De igual modo, hemos enfatizado que para preterir el requisito de agotamiento “[n]o basta ... con que los remedios administrativos sean lentos. ... Se requiere también que éstos constituyan una gestión inútil e inefectiva o que produzcan un daño irreparable”. (Enfasis en el original.) Guadalupe v. Saldaña, Pres. U.P.R., 133 D.P.R. 42, 50 (1993).
*853 IV
Al ordenar el agotamiento de remedios, el Tribunal de Apelaciones indicó que los peticionarios no le dieron una oportunidad adecuada al Departamento de Salud para atender a su reclamo, pues al momento de presentar la demanda de injunction, los inspectores de la agencia esta-ban recopilando información. El tribunal fundamentó su determinación en el hecho de qüe él Departamento de Sa-lud tiene la facultad en ley para entrar a una casa y “hacer remover o corregir con urgencia cualquier daño o estorbo público en la forma y modo prescritos en los reglamentos de sanidad”. Art. 30 de la Ley Núm. 81 de 14 de marzo de 1912 (3 L.P.R.A. see. 181).
No hay duda de que el Secretario de Salud tiene la fa-cultad delegada de atender los asuntos de salud y sanidad públicas (3 L.P.R.A. see. 171) y que, en aras de ejercer su responsabilidad, puede ordenar la remoción de un estorbo público, imponer multas (3 L.P.R.A. see. 181) o remover el estorbo si el dueño, agente o inquilino de la propiedad no lo hace en un plazo razonable (3 L.P.R.A. see. 182). Sin embargo, la dilación del Departamento de Salud en tramitar y finiquitar la querella presentada por los esposos Flores-Jiménez demuestra que el procedimiento administrativo en este caso fue inútil e ineficaz, pues no proveyó un reme-dio oportuno, expedito y adecuado a ios peticionarios.
Al recurrir al trámite administrativo ante el Departa-mento de Salud, los esposos Flores-Jiménéz pretendían que dicha agencia lidiara con una situación que ellos con-sideraban que amenazaba la salud pública. En junio de 2004, los oficiales del Departamento realizaron varias ins-pecciones a la propiedad y se comunicaron con la señora Colberg para resolver la situación de la cantidad de perros que ella mantiene en su residencia. Además, con el aval del Departamento de Salud, se inició un proceso judicial al amparo de la Ley sobre Controversias y Estados Provisio- *854 nales de Derecho, en el cual se acordó tramitar el reclamo de los aquí peticionarios ante el Departamento de Salud. Sin embargo, transcurrido un año de haber sido presen-tada la querella ante el Departamento de Salud, nunca se tramitó un procedimiento para ordenar la remoción del es-torbo alegado ni se completó el procedimiento ante la agen-cia al amparo del Reglamento del Secretario de Salud para Regular los Procedimientos adjudicativos en el Departa-mento de Salud, Reglamento Núm. 5467. Véase la Tras-cripción de la Prueba, Apéndice de la Petición de certiorari, págs. 132-135 y 172.
Ante este cuadro de dilación en el procedimiento administrativo, es ineludible concluir que no se justifica requerir el agotamiento de un remedio administrativo que se revela ineficaz e inadecuado. De igual modo, pesa sobre nuestra decisión el hecho que estamos ante un reclamo de la existencia de un daño sustancial e inminente a los intereses de los peticionarios y del público en general que aumenta tras la dilación de la agencia. Adviértase que se trata de una alegación de un daño a la salud colectiva y a la tranquilidad de un vecindario. Por lo tanto, el balance de las conveniencias se inclina a prescindir de agotar los procedimientos ante el Departamento de Salud, para así finiquitar una controversia que involucra la salud pública.
Habiendo establecido que no procede aplicar en este caso la doctrina del agotamiento de los remedios adminis-trativos, entramos a examinar si, en efecto, nos encontra-mos ante un estorbo público que requiere, como dictaminó el Tribunal de Primera Instancia, la concesión de un injunction permanente.
V
En su Art. 277, el Código de Enjuiciamiento Civil concede a “cualquier persona, agencia pública o municipio cuyos bienes hubieren sido perjudicados o cuyo bienestar *855 personal resulte menoscabado” por un estorbo público, la facultad de promover una acción para obtener el cese del estorbo. (Énfasis nuestro.) 32 L.P.R.A. see. 2761. Además, provee para la concesión de una compensación por los per-juicios que el promovente de la acción sufra por el estorbo. Un estorbo, a su vez, es
[t]odo lo que fuere perjudicial a la salud, indecente u ofen-sivo a los sentidos, o que interrumpa el libre uso de la propie-dad, de modo que impida el cómodo goce de la vida o de los bienes, o que estorbare el bienestar de todo un vecindario, o un gran número de personas o que ilegalmente obstruyere el libre tránsito, en la forma acostumbrada, por cualquier lago, río, bahía, corriente, canal o cuenca navegable, o por cualquier parque, plaza, calle, carretera pública y otras análogas. 32 L.P.R.A. see. 2761.
Como se observa, el Art. 277 no sólo dispone que el Es-tado inicie una acción de estorbo público, sino que autoriza a los particulares a proseguir una acción de estorbo público. En estos últimos casos se requiere que la persona haya sufrido un perjuicio en sus bienes o un menoscabo en su bienestar personal. Marín v. Herrera, 61 D.P.R. 646 (1943); Estela v. Mario Mercado e Hijos, 44 D.P.R. 563 (1933). De esta forma, el reclamante debe alegar y probar la existencia de un perjuicio especial.
Por otro lado, la disposición estatutaria sobre estorbo público autoriza la concesión de un injunction permanente y el resarcimiento de los daños ocasionados. Es decir, la acción de estorbo público tiene dos fines preeminentes: “reducir la perturbación hasta el punto que sea compatible con el cómodo disfrute de la propiedad y 2) compensar los daños ocasionados”. Casiano Sales v. Lozada Torres, 91 D.P.R. 488, 499 (1964). Véanse, además: Ortega Cabrera v. Tribunal Superior, 101 D.P.R. 612, 617 (1973); Fuentes v. Gulf, 91 D.P.R. 559, 565 (1964).
En el pasado hemos aplicado esta disposición estatutaria para abatir diversas perturbaciones que interfieren con *856 el libre disfrute de la propiedad y que amenazan a la salud pública. Así, por ejemplo, hemos eliminado o controlado ruidos, emanaciones de humos y gases, malos olores y derrames de aguas sucias. Véanse: Figueroa Velázquez v. A.A.A., 99 D.P.R. 105 (1970); Fuentes v. Gulf, supra; Casiano Sales v. Lozada Torres, supra; Arcelay v. Sánchez, 77 D.P.R. 824 (1955).
Además, hemos enfatizado lo delicado de la función judicial de adjudicación en estos casos. La contraposición del interés al libre disfrute de la propiedad, frente al interés en la salud y seguridad públicas, exige el más delicado análisis de los derechos y las responsabilidades de las partes a los fines de armonizarlos en la medida posible. Es decir, en este balance es esencial tomar en cuenta los intereses de las partes en disfrutar libremente de su propiedad sin cargas irrazonables sobre éste. Véase Arcelay v. Sánchez, supra, pág. 832. En virtud de ello, es “fundamental... resolver ... si el uso que hace una persona de su propiedad, es o no razonable, tomando en cuenta el derecho de la otra a disfrutar la propiedad que es suya”. Id., pág. 833.
La medida de lo razonable en estos casos depende, en-tonces, de una serie de factores que los tribunales deben tomar en cuenta a la luz de los hechos sobre los cuales se fundamenta el reclamo. Aun cuando no existe una ecuación inmutable, hemos identificado una serie de criterios que se han de considerar. Por ejemplo, el lugar donde ocurre la actividad impugnada, la naturaleza, extensión, utilidad y el valor del uso, el carácter del daño alegadamente sufrido y la naturaleza del derecho o del uso afectado por el ale-gado estorbo. Arcelay v. Sánchez, supra.
De igual modo, es de importancia fundamental que los tribunales adopten un remedio adecuado para abatir el estorbo sin imponerle restricciones irrazonables a la parte promovida. Ante el hecho de que, en los casos como el que nos ocupa, se enfrentan los intereses de dos personas de disfrutar de su propiedad, en nuestros pronunciamien- *857 tos hemos procurado adoptar los remedios judiciales que propendan a eliminar o aminorar una perturbación, siendo conscientes de que el disfrute a la propiedad puede conlle-var intromisiones moderadas y razonables.
Así, por ejemplo, en Arcelay v. Sánchez, validamos las medidas adoptadas, por el tribunal sentenciador para con-trolar la explotación de una planta de pasteurización y la venta de leche en una zona primordialmente residencial. Consideramos que la forma en que se explotaba la indus-tria constituía un estorbo a la parte allí demandante, por lo que entendimos adecuado permitir su funcionamiento, su-jéto a ciertas medidas en tomo al horario de trabajo y a que se realizaran cambios en la maquinaria y el equipo para evitar daños al vecindario. En modo análogo, validamos en Casiano Sales v. Lozada Torres, una sentencia que limitó las operaciones de una fábrica de construcción de ventanas y puertas de metal para aminorar el impacto de la industria en el disfrute de la propiedad de los allí demandantes. (2)
Finalmente, en Figueroa Velázquez v. A.A.A., supra, determinamos que la orden del foro primario para remover una bomba de alcantarillado en una urbanización, por su cercanía a la residencia de los demandados, fue suma-mente drástica. También expresamos que “la sentencia de injunction debió limitarse a ordenar a la demandada para que en un término razonable realice las obras o reformas razonábles y adecuadas para eliminar o aminorar la perturbación”. Id., pág. 112.
En resumen, nuestros pronunciamientos revelan que en los casos como el que nos ocupa, el hecho de que proceda remover un estorbo, no conlleva en toda ocasión la supresión absoluta de la actividad o el uso impugnado. Los tribunales, por lo tanto, pueden optar por tomar medidas *858 específicas para eliminar las causas de la perturbación sin prohibir absolutamente la conducta del demandado. Véase, además, H.A. Colón Cruz, Notas sobre recursos extraordinarios, certiorari, injunction, mandamus, 42 (Núm. 3) Rev. C. Abo. P.R. 445, 453 (1981).
VI
En este caso, los esposos Flores-Jiménez invocaron las disposiciones del Art. 277 del Código de Enjuiciamiento Civil, para abatir los ruidos, malos olores y riesgos de enfer-medades, alegadamente creados por los animales de la se-ñora Colberg. Estamos, por lo tanto, ante el ejercicio de la acción de estorbo público por personas privadas. Debemos examinar entonces si existe una perturbación en los inte-reses de los peticionarios que configure un daño especial a ellos, digno de protección judicial. De igual modo corres-ponde evaluar si la orden dictada por el tribunal de instan-cia, en la que se dispuso que la señora Colberg deberá remover todos sus animales y condenándola al pago de diez mil dólares por daños, es adecuada y razonable.
A. Surge de la prueba desfilada ante el Tribunal de Primera Instancia, que los esposos Flores-Jiménez residen en la ciudad de Nueva York y mantienen una propiedad en el Municipio de Cabo Rojo, la cual visitan entre cuatro y ocho veces al año. En general, se quejan de que no pueden disfrutar tranquilamente de su residencia, debido a los rui-dos que los animales de la señora Colberg emiten y a los malos olores que éstos producen.
En la vista celebrada, el señor Flores Berger testificó que escucha constantemente los ladridos de los perros y está expuesto a ello en su patio, por lo que no puede salir a pensar, escribir o conversar con sus amigos. También in-dicó que, a pesar de que la señora Colberg encierra los perros de noche, él los escucha ladrando. En cuanto a los malos olores, reconoció que el olor no se percibe todo el *859 tiempo, pero que cuando sopla el viento es muy desagradable. Apéndice de la Petición de certiorari, pág. 201. Finalmente, el señor Flores Berger testificó que en-tran muchas moscas a su hogar. Aunque manifestó no es-tar seguro de dónde provienen, entiende que son producto de los malos olores de la casa de la señora Colberg. íd., pág. 203. Por su parte, la señora Jiménez Román testificó que los perros ladran durante muchas horas y que percibe el olor a excreta y a “perro mojado” en una esquina de su patio.
A los fines de sostener sus alegaciones, los esposos Flores-Jiménez también presentaron el testimonio del señor José Manuel Irizarry, amigo de éstos y quien visita la resi-dencia esporádicamente. Este testificó que, en una ocasión, los perros ladraron durante veinte minutos; que los ladri-dos son altos, aunque en la parte de atrás de la casa se oyen menos, y que cuando el viento sopla, se percibe el mal olor en el balcón.
En segundo lugar, los oficiales del Departamento de Sa-lud, los señores Medina Galindo y Alvarado Torres testifi-caron que, cuando visitaron la propiedad de la demandada recurrida, ella se encontraba limpiando el patio. Sin embargo, observaron montículos de excreta en algunas áreas e identificaron la presencia de moscas en el área de los recipientes de alimentos y donde la señora Colberg depo-sita los excrementos de los animales. Además, el inspector Alvarado Torres indicó que pudo percibir el mal olor.
En apoyo a su reclamo sobre los ruidos que emiten los animales, los demandantes peticionarios presentaron el testimonio del ingeniero Carlos Rosado, a quien contrata-ron para realizar un estudio de ruido. Su testimonio y su informe pericial reflejaron que, en los puntos de muestreo escogidos en la colindancia de las propiedades de las partes aquí en litigio, se registraron sonidos por encima de los permitidos por el Reglamento de la Junta de Calidad Am-biental para el Control de la Contaminación por Ruido, *860 Reglamento Núm. 3418 de 25 de febrero de 1987. Según el perito, la fuente emisora de los sonidos fue la residencia de la señora Colberg. A raíz de ello, el ingeniero concluyó que los sonidos causan molestias e intranquilidad.
No empece a estas conclusiones, el ingeniero reconoció que el Reglamento de Ruidos de la Junta de Calidad Am-biental excluye los ruidos de animales. Sobre ello, el tribunal de instancia determinó que, aun cuando el reglamento no rige los niveles de ruido de los animales, se podía recu-rrir a este a modo comparativo, y a partir de ello, concluyó que el ruido en este caso afectaba la salud y la seguridad de los humanos.
Junto a la prueba detallada, el tribunal de instancia también contó con el testimonio del Sr. Carlos Ortiz, vecino de la señora Colberg, y cuya propiedad colinda por el lado norte con la de ésta. El señor Ortiz indicó que en muy pocas ocasiones siente el mal olor, aunque reconoció que se percibe mayormente cuando llueve. Indicó, además, que por lo general no siente el ladrido de los perros, mas reco-noció que en ocasiones ladran cuando pasan personas u animales por el lugar. Otra vecina del lugar, la Sra. Giselle López Robles, testificó a favor de la parte demandada, pero admitió que los perros ladran a veces.
Por su parte, la señora Colberg testificó que ha inver-tido más de veintiséis mil dólares para complacer a los demandantes, que cambió las ventanas y las puertas de la casa, e indicó que en una época mantenía los perros ence-rrados de siete de la noche a siete de la mañana. Como alternativa solicitó que se le permita construir un muro que elimine los sonidos. Finalmente, la señora Colberg pre-sentó los testimonios de sus hijos, el Ledo. Gualberto del Toro y el Dr. Rodolfo del Toro. Ambos testificaron que la señora Colberg mantiene la casa muy limpia.
Por otro lado, es menester resaltar que el lugar donde se encuentra la residencia de la señora Colberg está clasifi-cado como un “Distrito Turístico Selectivo” y en este dis- *861 trito se permite la crianza de animales. Sec. 60.00 del Re-glamento de Zonificación de Puerto Rico, Reglamento Núm. 4 de Planificación. Además, la prueba vertida en el juicio, incluyendo las fotografías del lugar que obran en autos, demuestran que al momento del juicio existían unas cuantas residencias, algunos solares vacíos y se estaban construyendo unos apartamentos. Finalmente, en el lugar se pueden encontrar animales como caballos y vacas. Así, es menester tomar en cuenta que la prueba que obra en autos demuestra que nos encontramos ante un área semi-rural en la que predomina el uso residencial.
Tomando en consideración toda lá prueba detallada, el Tribunal de Primera Instancia determinó que la señora Colberg mantiene un estorbo público que se debe remover en su totalidad. En especial concluyó que los demandantes no pueden salir a su patio ni al balcón, porque: (1) los pe-rros comienzan a ladrar y se percibe un mal olor; (2) la cantidad de perros trasciende lo razonable; (3) los niveles de ruido durante los ladridos son en exceso del límite acep-table al oído humano; (4) cuando sopla el viento el olor es insoportable, y (5) la gran cantidad de perros no permite un buen control de la limpieza.
Coincidimos con la conclusión del Tribunal de Primera Instancia, a los efectos de que los animales de la señora Colberg —los cincuenta y ocho perros, y los treinta gatos— causan ruidos y malos olores que afectan a los peticiona-rios en el disfrute de su hogar, y que representan un es-torbo público. Tal y como concluyó el Tribunal de Primera Instancia, los demandantes peticionarios lograron estable-cer la existencia de una perturbación a la salud y al bien-estar público, que a su vez les afecta de forma particular, puesto que los ruidos de los perros les molestan de noche y los malos olores perturban el cabal disfrute de su propiedad. Además, la presencia de excrementos y de reci-pientes con alimentos y deshechos de los animales, confi-gura una situación lesiva a la higiene. Ello, en contraven- *862 ción al Reglamento de Salud Ambiental, el cual dispone en su Art. IV, Secs. 1 y 10, que el dueño de una casa deberá mantener los patios y sus alrededores en estricta limpieza, libres de deshechos de animales y que los lugares donde se encuentren animales domésticos deberán mantenerse limpios.
No obstante, entendemos que la determinación de orde-nar la remoción de todos los animales es excesiva y drás-tica, pues el tribunal no examinó la magnitud de la pertur-bación, no consideró alternativas para aminorarla y tampoco le confirió la debida importancia que tienen las gestiones que la señora Colberg ha realizado para evitar las molestias que sus animales puedan causar. Veamos.
En primer término, aun cuando la prueba testifical y pericial(3) que se desfiló en el juicio demuestra que los cin-cuenta y ocho perros ladran de noche y de día, y que los ladridos se pueden percibir en la residencia de los deman-dantes peticionarios, es menester conferirle importancia al hecho de que algunos vecinos testificaron que a éstos no les molestan en sus hogares. Véase, por ejemplo, testimonio del Sr. Carlos Ortiz, Apéndice de la Petición de certiorari, págs. 225-226.
De otra parte, no podemos minimizar el hecho que, a pesar de que en el lugar se puede percibir un mal olor a perro y que se observan moscas, la prueba también esta-bleció que la señora Colberg mantiene su hogar limpio, re-coge constantemente los excrementos de los perros y el olor se percibe particularmente cuando llueve. Por lo tanto, aun cuando podemos concluir que los demandantes peticiona- *863 rios perciben malos olores en ciertas partes de su casa, dependiendo del día y de cómo sopla el viento, no podemos estar de acuerdo con la conclusión del tribunal de instancia de que el olor es de tal magnitud que justifique remover a todos los animales.
Finalmente, no existe prueba en el expediente que indi-que que los demandantes peticionarios han sufrido enfer-medades por causa de los animales ni que éstos amenacen la seguridad de los peticionarios o del vecindario. Obra en autos prueba de que los perros están esterilizados y que para julio de 2005 estaban vacunados. Apéndice de la Pe-tición de certiorari, pág. 73. Además, no se controvirtió el hecho de que la señora Colberg mantiene los animales en la primera planta de su propiedad y en el patio, por lo que permanecen encerrados.
A la luz de lo anterior, y luego de sopesar el interés de los esposos Flores-Jiménez de disfrutar de su propiedad sin ruidos ni malos olores, frente al interés de la señora Colberg de mantener a sus mascotas en su residencia, no procede ordenar la remoción de todos los animales. Al igual que determinó el foro primario, es indudable que las con-diciones actuales en las que la señora Colberg mantiene cincuenta y ocho perros y treinta gatos, son irrazonables. Sin embargo, debemos proveer un remedio que le permita mantener un número razonable de animales que no inter-fiera indebidamente con el derecho de los esposos Flores-Jiménez al cómodo disfrute de su propiedad. Ello, sobre todo, ante el hecho de que algunos vecinos cercanos de la señora Colberg no objetan la presencia de los perros.
Al determinar que procede conceder un remedio menos drástico al decretado por el Tribunal de Primera Instancia, también tomamos en consideración que la señora Colberg ha remodelado su casa para encerrar a los animales y evi-tar los ruidos. Además, ella testificó que está dispuesta a construir un muro que minimice los sonidos y presentó el testimonio de su hermano, el ingeniero Gustavo Colberg, quien habló sobre la posibilidad de construir un muro de *864 diez pies a prueba de sonido. Consideramos, entonces, que el Tribunal de Primera Instancia debió evaluar esta op-ción, antes de escoger el remedio drástico que aplicó. De igual modo, debió explorar tanto la posibilidad de limitar la cantidad de perros y gatos que la señora Colberg pueda tener en el lugar a la luz de sus características, como la alternativa de limitar el horario en el que los perros pue-den estar en el patio, tomando en cuenta los días o las épocas del año cuando los demandantes peticionarios visi-tan su propiedad.
En vista de que las alternativas expuestas podrían eli-minar o minimizar sustancialmente los ruidos de los pe-rros y los malos olores, el Tribunal de Primera Instancia debe estructurar un remedio que garantice los derechos de todas las partes involucradas y que elimine o minimice sustancialmente el estorbo.
Procedemos, entonces, a pasar juicio sobre la partida de los daños que el tribunal de instancia concedió a los de-mandantes peticionarios y sobre la imposición de honora-rios de abogados.
B. Según establecimos, la causa de acción para abatir un estorbo público le permite al tribunal eliminar o aminorar la perturbación y confiere, además, la potestad de conceder una partida en concepto de los daños sufridos. Sobre el tipo de daño compensable en estos casos, hemos aclarado que el daño debe ser verdadero y perceptible a los sentidos, puesto que no existe un remedio cuando se trate de una inconveniencia ligera o una pequeña incomodidad. Casiano Sales v. Lozada Torres, supra, pág. 498. Véase, además, Arcelay v. Sánchez, supra, págs. 832-833. La magnitud del daño, entonces, incide en el monto que se deba otorgar como compensación monetaria. Casiano Sales v. Lozada Torres, supra.
De otra parte, en diversas ocasiones hemos reiterado que los tribunales apelativos no deben intervenir con la estimación de los daños que los tribunales de instan- *865 cia realicen, salvo cuando la cuantía concedida advenga ridiculamente baja o exageradamente alta. Nieves Cruz v. U.P.R., 151 D.P.R. 150, 170 (2000). Esta norma, a su vez, está predicada en el hecho de que la valorización de los daños está sujeta a un cierto grado de especulación y conlleva “elementos subjetivos tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos”. S.L.G. Rodríguez v. Nationwide, 156 D.P.R. 614, 622 (2002).
Conforme a esta normativa, al modificar una cuantía, es menester tomar en cuenta la discreción de los tribunales de instancia al aquilatar la prueba presentada en torno a los daños. No obstante, la cautela qúe debe permear la re-visión de una cuantía por daños, ello no nos impide inter-venir con la discreción del foro primario en instancias de pasión, prejuicio, error manifiesto o parcialidad. S.L.G. Rodríguez v. Nationwide, supra. Es decir, en supuestos del abuso de discreción.
En el caso bajo análisis quedó establecido que la tenen-cia de cincuenta y ocho perros y treinta gatos constituye un estorbo público que afecta particularmente a los deman-dantes peticionarios. Según la prueba que obra en autos, los ladridos de los perros impiden a los esposos Flores-Jiménez disfrutar del patio y del balcón de su casa e inter-fieren con sus horas de descanso. Asimismo, los malos olo-res ocasionados por los animales perturban el disfrute de su propiedad. Estamos, por lo tanto, ante un reclamo por daños morales, derivados de un menoscabo al disfrute de su propiedad.
A la luz de la prueba presentada sobre los daños sufri-dos, entendemos que el tribunal abusó de su discreción al conceder una partida por daños a todas luces en excesiva extremo. No hay duda de que los esposos Flores-Jiménez han sufrido daños a raíz del hecho de que la señora Col-berg mantiene una cantidad irrazonable de perros y gatos en su hogar. Sin embargo, la cantidad de cinco mil dólares *866 otorgada a cada demandante no guarda armonía con los hechos del caso. Adviértase que los daños probados por los demandantes peticionarios se contraen a la pérdida del disfrute de su propiedad por ruidos y malos olores, la cual visitan pocas veces al año. Procede entonces reducir la in-demnización a quinientos dólares por cada demandante.
Para culminar, entendemos que la señora Colberg no actuó con temeridad en el trámite del pleito, por lo que no procedía la imposición de dos mil quinientos dólares en concepto de honorarios de abogado.
Por mandato de la Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III, el tribunal goza de la facultad de imponer honorarios de abogados a la parte que haya procedido con temeridad o frivolidad. Sobre las bases de esta disposición estatutaria hemos indicado que un litigante actúa con temeridad cuando con “terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito”. Rivera v. Tiendas Pitusa, Inc., 148 D.P.R. 695, 702 (1999). Véase, además, Domínguez v. G.A. Life, 157 D.P.R. 690, 706 (2002). Además, la determinación de temeridad es de índole discrecional, por lo que sólo debemos intervenir con ella cuando nos enfrentemos a un caso de abuso de discreción. Colón Santos v. Coop. Seg. Mult. P.R., 173 D.P.R. 170 (2008); P.R. Oil v. Dayco, 164 D.P.R. 486 (2005).
Los hechos del caso demuestran que la señora Colberg ejerció su derecho a presentar prueba sobre la inexistencia del estorbo y sobre las medidas que ha tomado para evitar las perturbaciones de las cuales se quejan los peticionarios. Además, presentó alternativas para resolver la situación. Por lo tanto, no encontramos que las defensas presentadas por la demandada fueran infundadas o injustificadas, o que la señora Colberg se defendiera de forma obstinada. Tampoco encontramos indicios de que ella desplegara una *867 conducta temeraria que obligara a los demandantes a per-seguir un pleito innecesario. Procede entonces, eliminar la partida de los honorarios de abogados.
Por los fundamentos antes expuestos, revocamos la sen-tencia del Tribunal de Apelaciones que ordenó a las partes agotar los remedios administrativos y modificamos, a su vez, la sentencia del Tribunal de Primera Instancia en la medida que ordenó la remoción de todos los animales que la parte demandada recurrida mantiene en su propiedad. Se devuelve el caso al Tribunal de Primera Instancia para que evalúe qué cantidad de animales es razonable mante-ner en el lugar donde vive la señora Colberg, examine la alternativa de construir un muro a prueba de sonido para remover el estorbo causado por los ladridos de los perros y explore la posibilidad de imponer medidas tendentes a ga-rantizar que la señora Colberg mantenga su hogar en con-diciones limpias y encierre a sus perros durante ciertas horas de la noche y de la mañana. Finalmente, se modifica la cuantía de daños a $500 por cada demandante y se elimina la partida de honorarios de abogado.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rebollo López emitió una opi-nión disidente, a la cual se le unió el Juez Presidente Señor Hernández Denton.

 A dicha misiva, la Leda. Evelyn Benvenutti Toro, representante legal de la señora Colberg, respondió que esta última no operaba un albergue de animales, que mantenía su residencia limpia y libre de malos olores, y que los perros no emitían ruidos excesivos entre las 6:00 de la tarde y las 6:00 de la mañana.

 Como medida adicional, ordenamos a los demandados elevar la chimenea de su fábrica para evitar la circulación de sustancias nocivas en la propiedad de los demandantes.

 En su informe, el perito ingeniero comparó los niveles de ruido registrados en la colindancia entre las propiedades de las partes en litigio con los límites de niveles de sonido recogidos en el Reglamento para el Control de la Contaminación por Rui-dos de la Junta de Calidad Ambiental, Reglamento Núm. 3418 de 25 de febrero de 1987. Sin embargo, los niveles máximos de sonido, contenidos en el Reglamento, excluyen los sonidos causados por los animales. No empece a ello, entendemos que los hallazgos del perito y su testimonio establecieron que los perros ladran de noche y de día, y que nos permiten concluir, a la luz de toda la prueba desfilada, que sus ladridos se escuchan en la propiedad de los esposos Flores-Jiménez.